**IN THE SUPREME COURT OF THE STATE OF IDAHO**

|  |  |  |
|---|---|---|
| SECURITY INVESTOR FUND LLC and SECURITY FINANCIAL FUND LLC, | ) ) ) | |
| Plaintiffs-Appellants-Cross Respondents, | ) ) ) | |
| v. | ) ) ) | |
| BRIAN CRUMB, | ) ) | **Moscow, April 2019 Term** |
| Defendant-Respondent-Cross-Appellant, | ) ) ) | **Filed: May 23, 2019** |
| and | ) ) | **Karel A. Lehrman, Clerk** |
| JENNIFER O'CALLAGHAN, BRIAN O'CALLAGHAN, JITINVEST LLC, SPIRIT ELEMENTS, INC., AND TODD A. REEVE, | ) ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Richard S. Christensen, District Judge.

The judgment of the district court is <u>affirmed</u> in part, <u>vacated</u> and <u>remanded</u> in part.

Bistline Law, PLLC, Coeur d'Alene, for appellant. Arthur M. Bistline argued.

Murphey Law Office, PLLC, Coeur d'Alene, for respondent. Darrin L. Murphey argued.

_____

STEGNER, Justice.

In 2005, Brian Crumb, Frankie McFeron-Crumb, and Marian Crumb joined together with Richard Abbey and Keri Ann Abbey to form Abbey & Crumb Developments, LLC, for the purpose of developing an eighteen-lot subdivision near Post Falls, Idaho. Sometime in 2006, the LLC caused a road to be constructed, which was to serve as the entrance for the subdivision (the

1

entrance road). The road was built on Brian and Frankie Crumb's land abutting the subdivision and, once constructed, was the only drivable road in and out of the subdivision.

In September 2006, the Crumbs withdrew from the LLC. Shortly thereafter, the LLC defaulted on a loan from Security Investor Fund, LLC, and Security Financial Fund, LLC (collectively "Security"). Security then accepted deeds in lieu of foreclosure from the LLC and became an owner of certain lots within the subdivision. At some point in 2017, Brian Crumb took the position that certain subdivision lot owners did not have a right to use the entrance road on his adjoining property, as no applicable easements had ever been recorded. Security then initiated the underlying lawsuit in an effort to establish an easement to use the entrance road. The district court granted summary judgment to Brian Crumb and entered judgment in his favor dismissing Security's complaint. Security appeals from that judgment. Brian Crumb also appeals the district court's denial of his request for attorney fees and costs below and requests attorney fees on appeal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Brian Crumb (Crumb) and his wife, Frankie McFeron-Crumb (Frankie), purchased a parcel of real property in Kootenai County (the adjacent Crumb property).[1] A few years later, on July 25, 2005, Crumb, Frankie, Crumb's mother, Marian Crumb (Marian), and Richard Abbey and Keri Ann Abbey (collectively "Abbeys"; the singular "Abbey" refers to Richard Abbey)[2] formed an LLC named Abbey & Crumb Developments, LLC (the LLC). The purpose of the LLC was to develop an eighteen-lot subdivision on 200 acres as depicted in the Second Amended Plat of Fritz Heath Forest Tracts (the subdivision).[3] The adjacent Crumb property is not located within the subdivision. However, the adjacent property adjoins the subdivision by sharing a common boundary. The Second Amended Plat depicts an access road through the subdivision that does not travel into the adjacent Crumb property.

On September 23, 2005, Crumb met with the engineering firm Inland Northwest Consultants (INC) to discuss the design and construction of an access road into and through the subdivision. INC supplied a proposal for the job on September 26, 2005.

---

[1] For reasons that were never adequately explained, Frankie was not named as a party in this litigation. It is undisputed that the property on which Security seeks to establish an easement is community property owned by Brian Crumb and Frankie McFeron-Crumb. In order for community property to be conveyed, both members of the community must join "in executing the sole agreement, deed or other instrument of conveyance . . . ." I.C. § 32-912.
[2] Richard Abbey and Keri Ann Abbey are husband and wife.
[3] The Second Amended Plat was recorded on May 23, 2005. A copy of the plat is attached to this decision as Exhibit 1. The right side of the plat map has been cut off.

On January 6, 2006, the LLC approved a Declaration of Covenants, Conditions and Restrictions for the subdivision (the CC&Rs), which were signed by Crumb, Frankie, Marian, and the Abbeys. (The CC&Rs was not recorded in Kootenai County until January 5, 2016, almost exactly ten years later.) The CC&Rs state the following: "The declarant[4] hereby reserves an easement for a private road through each lot to service continued lots in Fritz Heath Second Amended Forest tracts. The road easement on each lot is shown in Exhibit 'A' which is attached and incorporated herein." Although the nature and content of Exhibit "A" is contested, there is no dispute that it was not attached to nor was it recorded with the CC&Rs. Crumb contends the map that should have been attached to the CC&Rs would have shown the original road as depicted on the plat maps—a road not traveling through his property. In contrast, Abbey attached a dark and nearly unrecognizable map to his affidavit, claiming it is what should have been attached and recorded with the CC&Rs. Upon closer inspection, it can be seen that Abbey's map depicts the road later contemplated by INC that *does* run through the adjacent Crumb property. Abbey's map is undated.

Also in 2006, INC advised the LLC that, due to the steep topography of the subdivision, it would be cheaper to construct a roadway through the adjacent Crumb property than to build it where originally depicted in the Second Amended Plat. As a result, INC designed a road to that effect called Monument Ridge Drive (the entrance road). Two maps of the entrance road are dated July 14, 2006, and were stamped for approval by the Kootenai County Building and Planning Department on July 21, 2006.[5] With the entrance road designed, the LLC applied for a building permit to construct it through the adjoining Crumb property. The application was apparently approved by Kootenai County on July 21, 2006.

The dispute in this case regards a potential easement over the entrance road constructed on the adjoining Crumb property. It appears that sometime in 2006 there was, at least initially, an oral agreement allowing the road to be built and people to drive over it: Abbey claimed that the Crumbs "expressly agreed" that the entrance road would be constructed on the adjoining Crumb

---

[4] The CC&Rs do not define "declarant."

[5] The dates on these maps contradict Abbey's contention that the January 6, 2006, CC&Rs should have had the map with the entrance road traveling through the adjacent Crumb property attached to it. For Abbey's contention to be accurate, INC would have had to have either mapped the entrance road before the CC&Rs were signed on January 6, 2006 (which appears very unlikely given the date of the map), or the CC&Rs would have had to have been amended at some point later in time. An amendment would have had to have been written, recorded, and approved by 75% of the lot owners. There is no record of such an amendment. It is thus more likely that the map that was supposed to be attached to the CC&Rs is not the map Security now contends was *meant* to be attached to the CC&Rs.

property and that the road would be used by all the subdivision lot owners as the permanent, perpetual access to all of the subdivision lots. Crumb claimed that he made an offer to Abbey and the LLC that he would grant easements over the adjacent Crumb property to all of the lot owners within the subdivision for the payment of $200,000 from the LLC. (There is nothing in this record to suggest Abbey rejected Crumb's offer; however, Security challenges Crumb's claim and therefore the underlying offer.) Crumb contends the offer was accepted by the LLC and stated that the LLC and he "verbally agreed that upon the receipt of payment in the amount of $200,000" he "would grant easements to the lots in the" subdivision. It is undisputed that the LLC has not paid Crumb for any easements.

Construction of the road on the adjacent Crumb property began while Crumb, his wife, and his mother were still members of the LLC. Abbey claimed that he and Crumb personally worked on clearing trees for the entrance road on the adjacent Crumb property.

On September 26, 2006, after the alleged, initial oral agreement, all three Crumbs withdrew from the LLC. For their stake in the LLC, the LLC reconveyed certain lots from the subdivisions to the Crumbs. All five members of the LLC signed a withdrawal agreement to that effect. The withdrawal agreement also stated,

> ROADS AND UTILITIES T0 FRITZ FOREST: The parties agree that it will be the obligation and responsibility of the LLC to complete the road building work and to provide ingress and egress . . . to each lot . . . .

> ENTIRE AGREEMENT OF THE PARTIES: It is agreed, this is the entire agreement of the parties, and any amendment or additions to the Agreement must be in written form similar in form to this Agreement, with all parties signing said Amendment.

The entrance road was not finished or drivable when the Crumbs withdrew from the LLC. Sometime thereafter, however, the first section of the entrance road was completed and made passable into the subdivision through the adjoining Crumb property. Construction of the entrance road completely destroyed the old road depicted on the plats. The entrance road has been completed through the adjacent Crumb property and through at least the five northern lots of the subdivision. The LLC spent approximately $45,000 constructing the entrance road.

Sometime after the Crumbs withdrew from the LLC, the LLC defaulted on a debt owed to Security Financial Fund, LLC, and Security Investor Fund, LLC. Eventually, Security accepted deeds in lieu of foreclosure rather than foreclosing on the LLC's property that was held

4

as collateral. Although the specific details are not in the record, Security then became an owner of certain lots in the subdivision. No easements on Crumb's property were recorded when Security lent money to the LLC or when Security accepted the deeds. Nevertheless, Security claimed it reasonably believed it had legal access to its lots through the entrance road over the adjacent Crumb property.

In 2017, Crumb informed Kootenai County that certain subdivision lot owners did not have easements to cross his property. Consequently, Security filed its lawsuit on July 19, 2017.

In its verified complaint, Security alleged that Crumb committed a breach of contract and fraud, and asked for a declaratory judgment establishing an easement over Crumb's property. Security's complaint listed four additional subdivision lot owners as defendants (as they own the four lots between Security's lots and the adjoining Crumb property, upon which the entrance road travels) and requested a declaratory judgment establishing an easement over those properties as well. Crumb was the only defendant to answer and requested Security's complaint against Crumb be dismissed with prejudice. (Likewise, Crumb is the only named defendant involved in this appeal.) Neither party demanded a jury trial.

After cross motions for summary judgment, the district court issued a memorandum decision denying Security's motion and granting Crumb's. On January 19, 2018, the district court entered a judgment dismissing Security's complaint with prejudice. On February 1, 2018, Security moved the court to reconsider its summary judgment decision. On February 22, 2018, the court filed a memorandum decision denying Security's motion to reconsider (reconsideration decision). Security timely appealed.

## II.    STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 805, 353 P.3d 420, 426 (2015) (citing *Wesco Autobody Supply, Inc. v. Ernest,* 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010)). "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review." *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (quoting *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The fact that both parties move for summary

judgment does not in and of itself establish that there is no genuine issue of material fact." *Shawver*, 140 Idaho at 360, 93 P.3d at 691 (citing *Kromrei v. AID Ins. Co.,* 110 Idaho 549, 551, 716 P.2d 1321 (1986)).

When no jury has been demanded and the trial court will act as the finder of fact, the trial court "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Tiller White, LLC*, 160 Idaho at 419, 374 P.3d at 582 (quoting *Shawver*, 140 Idaho at 361, 93 P.3d at 692). Such inferences drawn by the trial court are upheld if reasonably supported by the record. *Id.* (citing *Beus v. Beus*, 151 Idaho 235, 238, 254 P.3d 1231, 1234 (2011)).

The district court was bound to apply these same summary judgment standards to its decision on the motion to reconsider, as this Court must also do when reviewing such a decision. *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012).

### III. ANALYSIS

**A. The district court correctly found there was no written easement.**

In its motion for summary judgment, Security argued that Frankie McFeron-Crumb and Brian Crumb granted its predecessor in interest, the LLC, an express, perpetual easement over the adjoining Crumb property. Security has argued that this express easement came into existence either by written agreement or by a partially (or fully) performed oral agreement.

Idaho's statute of frauds requires the transfer of an interest in real property to be in writing and that it be signed by the party granting the interest. I.C. § 9-503. An easement is an "interest in real property within the meaning of the statute [of frauds] and require[s] a writing subscribed by the grantor in order to be created." *Fajen v. Powlus*, 96 Idaho 625, 628, 533 P.2d 746, 749 (1975) (citation omitted). Thus, the initial inquiry is whether there is a writing evidencing the purported easement or at least a genuine issue of material fact regarding the existence of such a writing.

The district court found there was no evidence establishing a written easement. In this regard, the district court was correct. In its reconsideration decision, the district court further held that the CC&Rs did not satisfy the statute of frauds, as they did "not describe the property subject to the easement, . . . [and] without the missing attachment, there is no description whatsoever of the property subject to the agreement." On appeal, Security challenges this finding

6

in only one regard: that such a finding was precluded because the parties disagreed as to what was supposed to be attached to the CC&Rs, thereby creating a genuine issue of material fact. This argument fails because the CC&Rs are not applicable to the adjacent Crumb property—the property over which the easement is claimed.

"At a minimum, a valid express easement must identify the land subject to the easement and express the intent of the parties." *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012) (citing *Hodgins v. Sales,* 139 Idaho 225, 233, 76 P.3d 969, 977 (2003)). Although the writing need not necessarily use specific words to create an express easement, it must be clear from the writing that the parties intended to "establish a servitude" over the land identified. *Id.* (quoting *Coward v. Hadley*, 150 Idaho 282, 287, 246 P.3d 391, 396 (2010)).

The CC&Rs state that "[t]he property protected by this Declaration is the real estate located on and within the" subdivision. The passage in the CC&Rs regarding easements belies Security's contention, "[t]he declarant hereby reserves an easement for a private road through *each lot* to service continued *lots in Fritz Heath Second Amended Forest tracts.* The road easement *on each lot* is shown in Exhibit 'A.'" (Italics added.) Thus, by the clear language used, any easement created by the CC&Rs only existed on the eighteen lots *within* the subdivision. There is no reference to an easement *outside* the subdivision.

The adjacent Crumb property is not "on [or] within" the subdivision; it is not a lot. Accordingly, even drawing the inference in favor of Security, and assuming the attached exhibit was as Security contends (which, as noted, appears implausible) and depicted a road traveling through the adjacent Crumb property, that would not be enough to establish an easement over it. This is because the clause creating the easements does not establish any easements over lots outside the subdivision. Security has not contended that its proposed exhibit contains language creating easements on land outside of the subdivision; it has only suggested the exhibit is a map that depicted a road traveling over the adjacent Crumb property. Such an attachment would thus not evidence the parties' intent to create an easement over land not in the subdivision. Likewise, the CC&Rs do not identify the adjacent Crumb property as land subject to any easements. *See Machado*, 153 Idaho at 218, 280 P.3d at 721. Therefore, this disputed issue of fact (whatever was intended to be attached to the CC&Rs) is immaterial. Accordingly, the district court did not err in concluding that no written easement existed. Regardless, it still must be examined whether an

7

oral agreement was properly made as an exception to the statute of frauds. Preliminarily, it must be determined if such an oral agreement was barred by the later, written withdrawal agreement.

## B. The withdrawal agreement's merger clause did not preclude any oral easement agreement.

Crumb contends that the withdrawal agreement's merger clause precluded the alleged oral easement agreement. Security responds, arguing that the merger clause does not affect Security because Security was not a party to that agreement. This argument is irrelevant. As the successor in interest to the LLC, Security's claim depends on what its predecessor in interest did. Security clarifies in its response that the LLC is not bound by the withdrawal agreement either, as the agreement was only between the Crumbs and the other members of the LLC, not the LLC itself. For the reasons set forth below, the merger clause does not preclude the claim to an oral easement.

When a written contract is integrated, such as the withdrawal agreement is here, "[o]ral stipulations, agreements, and negotiations preliminary to a written contract are presumed merged therein and will not be admitted *to contradict the plain terms of the [written] contract.*" *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991) (alteration in original) (italics added) (quoting *Ringer v. Rice*, 97 Idaho 105, 108, 540 P.2d 290, 293 (1975)). This rule regards the barring of parol evidence to alter the later written contract.

> "[E]vidence of prior or contemporaneous oral agreements relating to the same subject matter is inadmissible to vary, contradict, or enlarge the terms of the written agreement." *Valley Bank,* 119 Idaho at 499, 808 P.2d at 418. However, parol evidence "is admissible to establish 'any fact that does not vary, alter, or contradict the terms of the instrument or the legal effect of the terms used.'" *Cannon v. Perry,* 144 Idaho 728, 731, 170 P.3d 393, 396 (2007) (quoting 29A Am.Jur.2d Evidence § 1106 (1994)).

*Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 267, 297 P.3d 222, 230 (2012).

Here, the merger clause and the parol evidence rule do not affect the purported oral easement for two related reasons. First, the alleged oral easement agreement does not relate to the same subject matter of the withdrawal agreement. The withdrawal agreement does not contemplate easements or a payment for easements; it concerns the transfer of assets to members leaving the LLC. Notably, the duty to construct the road is potentially within the ambit of both the alleged oral easement agreement and the withdrawal agreement. However, this overlap does not invoke the merger clause because of the second reason: Security is not trying "to vary,

8

contradict, or enlarge *the terms of the written* [withdrawal] agreement[,]" it is attempting to enforce separate and distinct terms of a different agreement. *Id.* (italics added). This remains true even though the duty to construct the road may be found in both agreements. No parties seek to introduce evidence to alter, enlarge, or contradict the requirement that the LLC construct the road—in fact, this obligation has been performed. Thus, the alleged oral easement agreement is not merged into the withdrawal agreement, and the validity of the oral agreement must still be determined.

**C. The doctrine of part-performance does not apply when the material elements of an agreement are uncertain. Consequently, the district court's dismissal was correct.**

Crumb argues that the statute of frauds, Idaho Code section 9-503, requires an agreement transferring an interest in real property to be in writing. Generally, an easement is considered to be an encumbrance on real property and therefore must be in writing. *Fajen*, 96 Idaho at 628, 533 P.2d at 749. Crumb argues because there is no written agreement, Security's claim of an oral easement fails. However, Idaho Code section 9-504 establishes an exception to the statute of frauds, i.e., the writing requirement found in section 9-503, that is a predicate to the transfer of real property. Section 9-504 allows courts "to compel the specific performance of an agreement, in case of part performance thereof." This is termed the doctrine of part-performance. *Bauchman-Kingston P'ship, LP v. Haroldsen*, 149 Idaho 87, 92, 233 P.3d 18, 23 (2008).

> Under the doctrine of part performance, when an agreement to convey real property fails to meet the requirements of the statute of frauds—as in this case where the alleged agreement was not reduced to writing—the agreement may nevertheless be specifically enforced when the purchaser has partly performed the agreement.

*Bear Island Water Ass'n, Inc. v. Brown* (*Bear Island*), 125 Idaho 717, 722, 874 P.2d 528, 533 (1994) (citations omitted).

What a party must show to invoke the doctrine of part-performance is essentially two-fold: (1) the underlying agreement must be clearly established and (2) the partial performance must be sufficient, shown by clear and convincing evidence, and directly referable to the established oral agreement. *Id.* Security has failed to establish an agreement between the LLC and Crumb; thus, the application of the doctrine of part-performance is precluded.

> Before an oral agreement to convey land will be specifically enforced, the underlying contract must be proven by clear and convincing evidence. *Anderson v. Whipple*, 71 Idaho 112, 123, 227 P.2d 351, 358 (1951). Further, the proof must show that the contract is complete, definite and certain in all its material terms, or

that it contains provisions which were capable in themselves of being reduced to certainty. *Id.* The material terms which must be identified in a contract to convey land include the parties to the contract, the subject matter of the contract, the price or consideration, and a description of the property.

*Bear Island*, 125 Idaho at 722, 874 P.2d at 533 (citations omitted). When an underlying agreement's consideration is found to be ambiguous, the contract is incomplete. *See Haroldsen*, 149 Idaho at 93, 233 P.3d at 24. That ambiguity in the agreement is enough to undermine the doctrine of part-performance and precludes specific performance. *Id.*

The district court found Security failed to submit evidence establishing the material term of consideration for the alleged oral agreement. It did not make any findings on the other required material terms, and those terms have not been addressed on appeal. Crumb stated in his declaration that he agreed to grant easements to all of the lots in the subdivisions "upon receipt of payment from [the LLC] in the amount of $200,000." The district court then noted that Security disputed whether the LLC actually agreed to pay the $200,000, leading the court to conclude that the material term of "price" had not been sufficiently proven.[6]

On reconsideration, Security contended that so long as the underlying oral agreement was supported by any adequate consideration (either an unpaid price, or the performance of the construction of the road), despite a factual disagreement regarding price, an enforceable oral contract arose. Security thus argued that the underlying agreement was still supported by consideration even if Crumb was not paid, because Crumb benefitted from the cheaper entrance road that increased lot values. The district court was not convinced, concluding that Security "still [had] not pointed to any evidence in the record which prove[d] the consideration or price term of the alleged oral contact to grant an easement." We agree with the district court's conclusion. On appeal, Security continued to argue that whatever the consideration, the alleged $200,000 or the inherent benefits Crumb gained through the construction of a cheaper road, it

---

[6] Ordinarily, a dispute about a material fact would result in summary judgment being denied. However, in this case, Security is obliged to establish, by clear and convincing evidence, a valid oral agreement in order to pursue its claim that part-performance takes the case outside the application of the statute of frauds. *Bear Island*, 125 Idaho at 722, 874 P.2d at 533. Further, the district court sat as the trier of fact and was entitled to make any inferences reasonably supported by the record. *Tiller White, LLC*, 160 Idaho at 419, 374 P.3d at 582. Accordingly, to proceed past summary judgment, Security would need to provide evidence, overcoming reasonable inferences, that there was at least a genuine dispute that clear and convincing evidence existed that could prove the underlying agreement. Because Security has not established an agreement between the LLC and Crumb, it may not pursue its claim of part-performance.

was enough to support the underlying oral agreement. This is not sufficient to invoke the doctrine of part-performance.

In order to invoke the doctrine of part-performance, the underlying agreement must be proven by clear and convincing evidence, including the material term of consideration, which must be definite and certain. *Bear Island*, 125 Idaho at 722, 874 P.2d at 533.

Crumb stated that before he left the LLC, he offered to grant easements to all lots in the subdivision over his property for the payment of $200,000. Crumb noted this offer was accepted by stating that the LLC and he "verbally agreed that upon the receipt of payment in the amount of $200,000" he "would grant easements to the lots in the" subdivision. (Crumb's email corroborates the agreement: "So it was agreed that we would make the entrance for the 200 acres on Frankie's and my 12 acres parcel . . . . Us [sic] partners on the 200 [the members of the LLC] talked about doing this and agreed Frankie and I would be compensated . . . .")

Although Security questions the truth and accuracy of the $200,000 payment term, Richard Abbey (a member of the LLC purportedly required to pay Crumb) did not refute this term, and Security has not provided evidence refuting the price to be paid.[7] Thus it is reasonable to infer that an initial oral agreement was made, where the LLC was to pay Crumb *at least some amount* for an easement over the adjacent Crumb property. However, without an agreed upon sum, there was no agreement. *See Haroldsen*, 149 Idaho at 93, 233 P.3d at 24. Security argues Crumb gave up the right to receive compensation from the LLC for the easements and use of his land, purportedly because of the 2007-2008 financial crisis. Crumb testified in a 2014 deposition that "[i]t was obvious the economy went in the toilet, and [the LLC] w[as]n't selling any more lots. So I felt that I'd rather have them spend the money on the road to that than pay me." However, Crumb's testimony is not as clear-cut as Security contends. At that time, Crumb left open the possibility of compensation for an easement. Consequently, Security's argument that the agreement was complete fails. On these facts, the district court correctly found that Security "had the burden to prove the material terms of the underlying oral contract and failed to provide evidence of the price/consideration term, so the alleged oral agreement cannot be specifically enforced based on part performance."

---

[7] Given Abbey's lack of denial and lack of other evidence, it was reasonable for the district court to infer the LLC agreed to pay Crumb something for the easements. *Tiller White, LLC*, 160 Idaho at 419, 374 P.3d at 582.

"Part performance does not substitute for an incomplete agreement, but instead operates to allow an agreement to be enforced when it does not comply with the statute of frauds." *Haroldsen*, 149 Idaho at 93, 233 P.3d at 24. Because whatever agreement between the LLC and Crumb was incomplete, the district court correctly granted summary judgment to Crumb. As a result of this determination, it is unnecessary to address Security's remaining arguments, because they are dependent on a viable underlying contract between the LLC and Crumb.

**D. The district court did not err in denying Crumb's request for attorney fees.**

Crumb's request for attorney fees under Idaho Code section 12-120(3) was denied by the district court. Idaho Code section 12-120(3) statutorily authorizes attorney fees in a case involving a "commercial transaction." In his cross-appeal, Crumb relies on *Garner v. Povey*, 151 Idaho 462, 470, 259 P.3d 608, 616 (2011) to argue that the district court's denial of attorney fees was in error.

Under Idaho Code section 12-120(3), "[w]hether an action is based on a commercial transaction is a question of law over which this Court exercises free review." *Intermountain Real Properties, LLC v. Draw, LLC*, 155 Idaho 313, 320, 311 P.3d 734, 741 (2013). Crumb correctly notes that *Garner* stands for the proposition that "allegations in the complaint that the parties entered into a commercial transaction and that the complaining party is entitled to recover based upon that transaction, are sufficient to trigger the application of I.C. § 12–120(3)." 151 Idaho at 470, 259 P.3d at 616. However, what Crumb fails to recognize is that *Garner* did not overrule the requirement that the commercial transaction must still be *between* the litigating parties. *See id.* (recognizing that *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 473, 36 P.3d 218, 225 (2001) did not award fees under section 12-120(3) because the two parties engaged in the litigation were not the two parties engaged in the commercial transaction). Consequently, the rule from *Great Plains* still applies: "I.C. § 12–120(3) cannot be invoked if the commercial transaction is between parties only indirectly related, i.e. there was no transaction *between* the parties . . . ." *See* 136 Idaho at 472, 36 P.3d at 224 (italics in original).

Although Crumb may be correct that Security's complaint nominally pleaded a commercial transaction in order to trigger the applicability of section 12-120(3), the underlying commercial transaction was between Crumb and the LLC. Security was not a party to any commercial transaction with Crumb. The LLC's involvement was as a successor in interest to the

LLC. Consequently, the district court correctly denied attorney fees to Crumb under section 12-120(3).

The district court also denied Crumb's request for attorney fees based on section 12-121. On appeal, Crumb contends the district court abused its discretion when it found Security's breach of contract claim and fraud claim were indeed frivolous but gave no reason as to why the declaratory judgment claim was not frivolous, thus failing to reach its decision by an exercise of reason. This argument is also unavailing.

"Fees under I.C. § 12–121 are not awarded to a prevailing party as a matter of right but, rather, are subject to the district court's discretion." *Garner*, 151 Idaho at 467, 259 P.3d at 613. Under section 12-121, "if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). "[W]hen a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation." *Garner*, 151 Idaho at 468, 259 P.3d at 614 (quoting *C & G, Inc. v. Rule,* 135 Idaho 763, 769, 25 P.3d 76, 82 (2001)).

The district court recognized this matter as one within its discretion as the abuse of discretion standard requires. Further, the district court stated that the easement claim was "arguable" based on the evidence submitted on summary judgment. The district court did not err in this conclusion. Crumb admitted to an agreement for easements multiple times and even stated he granted easements to "[a]nybody that" wanted one. Security's suit was not frivolous, and therefore an award of attorney fees to Crumb under Idaho Code section 12-121 would be inappropriate.

**E. The district court erred in failing to award costs to Crumb.**

Crumb requested his filing fee pursuant to Rule 54 of the Idaho Rules of Civil Procedure. As a prevailing party, Crumb is entitled to this cost as a matter of right. I.R.C.P. 54(d)(1)(A) & (C)(i). Given that the district court failed to award this cost, it erred. The case will be remanded to the district court to remedy this oversight.

**F. An award of attorney fees on appeal is denied.**

Security claims it should be awarded attorney fees on appeal because Crumb's defense on appeal was frivolous and without foundation. Security is apparently requesting fees under Idaho Code section 12-121, as it cites to *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018), *as*

*corrected* (July 31, 2018), which analyzes the applicability of section 12-121. On appeal, fees under section 12-121 may only be awarded to the prevailing party. *Id.* at 921, 422 P.3d at 1127. Security is not the prevailing party. Accordingly, Security is not entitled to attorney fees on appeal.

Crumb also requests attorney fees on appeal pursuant to section 12-121. Under section 12-121, attorney fees on appeal are "appropriate if the law is well-settled and the appellants have made no substantial showing that the district court misapplied the law." *Burns v. Baldwin*, 138 Idaho 480, 487, 65 P.3d 502, 509 (2003) (quoting *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 377, 973 P.2d 142, 148 (1999)). Here, the issues were complicated. Security's predecessor in interest spent roughly $45,000 to build a road to the subdivision. However, there was not a sufficiently definite contract to employ the doctrine of part-performance. Security's pursuit of its appeal was not frivolous. Consequently, Crumb is not entitled to attorney fees under Idaho Code section 12-121.

Crumb also seeks attorney fees on appeal pursuant to Idaho Code section 12-120(3), again arguing the case involved a commercial transaction. That request is likewise denied for the same reason announced above—whatever else can be said of Security's claim, there was never a commercial transaction between Security and Crumb. As a result, Idaho Code section 12-120(3) has no applicability to this case.

## IV.    CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to Crumb is affirmed. Its denial of attorney fees to Crumb is likewise affirmed. Its rejection of costs to Crumb is vacated and the case is remanded to remedy the failure to award costs. Attorney fees on appeal are denied. Costs on appeal are awarded to Crumb.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER, CONCUR.

Exhibit 1:

*Second Amended Plat of Fritz Heath Forest Tracts*



"2ND AMENDMENT" Book J Page 200A
AN IDAHO STATE CODE PLAT OF
# FRITZ HEATH FOREST TRACTS
LOCATED IN THE SE 1/4 OF THE SW 1/4 OF SECTION 15,
T.50N., R.5W., B.M., AND THE EAST 1/2 OF THE NW 1/4 AND
THE WEST 1/2 OF THE NE 1/4 OF SECTION 22, T.50N., R.5W., B.M.,
KOOTENAI COUNTY, IDAHO
OCTOBER 2004

## VICINITY MAP
NO SCALE

POST FALLS

PROJECT

## LEGEND

P.O.B.

## GRAPHIC SCALE

( IN FEET )
1 inch = 300 ft.

## LINE TABLE

## CURVE TABLE

## BASIS OF BEARING
SEE PAGE 1 FOR THE BASIS OF BEARING.

## REFERENCES
SEE PAGE 1 FOR THE REFERENCES.

## NOTES

## SURVEYOR'S CERTIFICATE
I, JOHN H. KINNEY, CE/LS #1909, A PROFESSIONAL ENGINEER AND LAND SURVEYOR IN THE STATE OF IDAHO, DO HEREBY CERTIFY THAT THIS IS A TRUE SURVEY OF THE PLATTED LAND MADE BY ME OR UNDER MY DIRECT SUPERVISION IN COMPLIANCE WITH THE LAWS OF THE STATE OF IDAHO.

REGISTERED
ENGINEER LAND SURVEYOR
STATE OF IDAHO
JOHN H. KINNEY

FRITZ HEATH FOREST TRACTS (SEC 15 &
KOOTENAI COUNTY, IDAHO

| DATE: OCT 2004 | REVISED: 10/26/2004 |
| CHKD: JHK | DATE: OCT 2004 | |
| PLOTTED BY: CJV | DATE: 10/28/2004 | SCALE: 1" = 300' |

Security Investor Fund LLC, etal vs Brian Crumb

Docket No 45969

BLOCK A

BLOCK "B"

LOT 1 10.051 AC
LOT 2 10.077 AC
LOT 4 10.080 AC
LOT 3 10.072 AC
LOT 1 10.000 AC
LOT 13 10.000 AC
LOT 14 10.000 AC
LOT 2 10.000 AC
LOT 3 10.000 AC
LOT 4 10.000 AC
LOT 12 10.000 AC
LOT 11 10.000 AC
LOT 5 10.000 AC
LOT 6 10.000 AC
LOT 7 10.000 AC
LOT 8 10.000 AC
LOT 10 17.502 AC
LOT 9 20.000 AC

BLOSSOM MOUNTAIN ESTATES