# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50558-2023

| | | |
|---|---|---|
| BLAINE SIMMONS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | February 2024 Term |
| | ) | |
| v. | ) | Opinion filed: June 27, 2024 |
| | ) | |
| TOM LOERTSCHER and JOSH WILLIAMS, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michael J. Whyte, District Judge. Kent Gauchay, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

John Simmons JD, LLM Professional Company, Idaho Falls, for Appellant. John Simmons submitted argument on the briefs.

Beard St. Clair Gaffney, P.A., Idaho Falls, for Respondents. Lance J. Schuster submitted argument on the briefs.

_____

ZAHN, Justice.

This appeal involves review of a grant of summary judgment in favor of cattle owners in an action seeking injunctive relief and trespass damages based on alleged herd district violations. For the reasons expressed below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Blaine Simmons owns land ("Simmons Parcel") in Bonneville County, directly adjacent to Bureau of Land Management ("BLM") land. In 1919, the Bonneville County Board of County Commissioners ("Board") created a herd district ("Herd District") that encompassed the Simmons Parcel as well as the adjoining BLM land. The Herd District prohibited livestock, including cattle,

from running at large within the boundaries of the Herd District during all seasons of the year. The Board has not vacated or modified the Herd District in any way since the Herd District was first established in 1919.

Tom Loertscher is an owner of Hi Willow Ranch Corporation. Since 1969, the Hi Willow Ranch Corporation has held a permit authorizing it to graze cattle on a portion of the BLM land ("Allotment" or "Loertscher Allotment") that adjoins the Simmons Parcel. In 1983, the Idaho Legislature designated "all uninclosed [sic] lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed and permitted to roam" as open range and also excised all federal land, including BLM land, from any herd district. Act of Apr. 1, 1983, ch. 120, 1983 Idaho Sess. Laws 313–14. As a result, the Loertscher Allotment became open range, upon which livestock, excepting swine, may graze and freely roam. *See* Act of Mar. 26, 1963, ch. 264, 1963 Idaho Sess. Laws 674–75; I.C. § 25-2402(3).

From time to time, cattle grazing on the Loertscher Allotment, allegedly owned by Josh Williams, have strayed onto the Simmons Parcel. The Simmons Parcel, which is located in the Herd District, is not fully enclosed by a fence; there is only partial fencing along or near the boundary separating the Simmons Parcel from the Loertscher Allotment, which is located on BLM land and is considered open range. The terrain along much of that boundary primarily consists of cliffs. Simmons repeatedly complained to Loertscher and Williams about cattle from the Loertscher Allotment being on his property. His counsel wrote a letter to Loertscher and Williams requesting they keep their cattle off Simmons's land and prescribing conditions for entry onto Simmons's land to retrieve their straying cattle. These conditions included the following:

1. You [the Loertscher family and Williams] have a text from [Simmons] expressly so permitting you to go onto [Simmons's] land to retrieve your cattle.

2. You may only be on [Simmons's] land for the time that is reasonably necessary for you to retrieve the straying cattle [while] you are yet on [Simmons's] land. In any event, you must leave [Simmons's] land no later than 3 hours after the text was sent.

3. Your presence on [Simmons's] land must be limited to areas thereof that are reasonably necessary for you to retrieve the straying cattle; even with a text permission, you are not to go onto any other part of [Simmons's] land.

4. You do not carry (neither on your person, in your vehicle nor otherwise) any gun or weapon onto [Simmons's] land (a conventional cattle prod is acceptable to [Simmons]).

Nevertheless, Loertscher's and Williams's cattle continued to wander onto Simmons's Parcel.

## B. Procedural Background

In September 2021, Simmons filed a small claims action against Loertscher and Williams alleging herd district violations and nuisance. The nuisance claims are not at issue in this appeal. Simmons sought $2,000 as compensation for damage to his pasture and for the time Simmons spent herding the cattle off his land. In December 2021, the magistrate judge assigned to the small claims action entered judgment in favor of Loertscher and Williams. Simmons timely appealed that judgment to the magistrate division for a trial de novo under Idaho Rule for Small Claims Actions 15(c), and subsequently filed an amended complaint. A different magistrate judge was then assigned to the matter.

In June 2022, Loertscher and Williams filed a motion for summary judgment, arguing that (1) herd district laws do not apply to the Loertscher Allotment, which is on BLM land and designated as open range, or to the cattle in question; (2) under Idaho Code section 25-2402, Simmons, as the owner of land within a herd district, was required to construct and maintain fencing along the Herd District's boundaries to protect his land from livestock that "roam, drift or stray from open range into the district;" and (3) Loertscher and Williams have a common law right to enter Simmons's Parcel at reasonable times and in a reasonable manner to retrieve their cattle.

Simmons filed a cross motion for summary judgment. Simmons did not contest that the Loertscher Allotment was designated as open range and could not be included in the Herd District. However, Simmons asserted that the Simmons Parcel was still part of the Herd District and fully protected by the Herd District rules that have been in place since 1919. Simmons argued that the fencing requirement for property owners within a herd district was not added to Idaho Code section 25-2402 until 1963, and the 1963 amendment included a savings clause that exempted existing herd districts from that requirement: "Provided, any herd district heretofore established shall retain its identity, geographic definition, and remain in full force and effect, until vacated or modified hereafter as provided by Section 25-2404, Idaho Code, as amended." 1963 Idaho Sess. Laws at 674–75.

Because the Herd District existed prior to 1963 without fencing, and its identity and geographic definition had never been modified by the Board as provided by Idaho Code section 25-2404, Simmons argued the fencing requirement of section 25-2402 did not apply to the Herd District or the Simmons Parcel. Simmons also argued the conditions he placed on Loertscher and Williams to retrieve their cattle from his property, as listed in the letter his counsel sent to

3

Loertscher and Williams, were reasonable.

Loertscher and Williams filed an objection to Simmons's motion for summary judgment, arguing that, regardless of whether the 1963 amendment applied to the Herd District, Simmons had no claim for damages against Loertscher and Williams due to the undisputed fact that the cattle strayed from open range/BLM land.

The magistrate court granted summary judgment in favor of Loertscher and Williams. The magistrate court explained that Idaho Code section 25-2402 states that herd district rules do not apply to cattle straying from open range unless the herd district is enclosed by a legal fence. The court rejected Simmons's argument that the statute's savings clause exempted the Herd District from the fencing requirement because the Herd District existed before the 1963 amendment's effective date:

> This [c]ourt is not persuaded that this language stands for the proposition that any herd district . . . created prior to 1963 is not required to abide by this statute. Rather, this Court believes that this language provides simply that any herd district created prior to the enactment of this statute is still a valid herd district and the ranges and boundaries of the previously established herd districts is [sic] unaltered by the statute.
>
> Furthermore, because the Loertscher Lot is BLM land, federal land owned by the United States, it cannot be designated as a herd district, nor are herd district provisions applicable to it. Rather, it is designated as open range land where livestock, excepting swine, may freely roam.

The magistrate court concluded that the herd district laws were inapplicable to the straying cattle at issue here and, while recognizing that no party had an absolute duty to fence in their land, also added that "Simmons must fence in his property if he wishes to keep cattle off his land or claim reparations for any damages incurred when cattle cross over onto his land."

In addition, the magistrate court agreed with Loertscher and Williams that they have the common law right "to enter onto Simmon's land—in a reasonable time and in a reasonable manner—to retrieve their cattle." Responding to each of Simmons's conditions for retrieval, the magistrate court concluded in large part that Simmons's requests went too far: (1) while it was permissible that Loertscher and Williams be required to notify Simmons of the need to enter his land to retrieve their cattle, it "could become unduly burdensome," and was therefore unreasonable to require Loertscher and Williams to receive a reply from Simmons before retrieving their cattle; (2) Loertscher and Williams were permitted to remain on Simmons's land "for only as long as necessary to retrieve their cattle, but this [c]ourt, understanding that cattle are not always the most

4

cooperative of livestock, decline[d] to place a time limit on that requirement"; (3) Loertscher and Williams were restricted to the areas of Simmons's land where the cattle have roamed; and (4) because "there are many elements of cattle ranching that reasonably require guns or other weaponry for protection[,] . . . it would be detrimental to the safety of [Loertscher and Williams] and unreasonable to force them to abandon their weapons at the property boundary . . . ."

Simmons filed a notice of appeal with the district court. Simmons contended that the magistrate court erred in applying Idaho Code section 25-2402's fencing requirement to the Herd District. He argued that the magistrate court's ruling rendered the "grandfathering sentence" of section 25-2402 meaningless. *See* I.C. § 25-2402 ("Provided, any herd district heretofore established shall retain its identity, geographic definition, and remain in full force an effect . . . ."). Simmons also argued that the magistrate court's ruling denied him his right as a property owner to impose reasonable conditions on Loertscher's and Williams's entry onto his property without a logical determination from the evidence that Simmons's conditions were unreasonable.

The district court affirmed the magistrate court's decision. The district court concluded the magistrate court correctly applied the fencing requirement from Idaho Code section 25-2402 to the Herd District. The district court further held that the magistrate court did not abuse its discretion in specifying how Loertscher and Williams may retrieve their cattle from Simmons's Parcel. Simmons timely appealed to this Court.

## II.    STANDARDS OF REVIEW

When reviewing the decision of a district court sitting in its capacity as an appellate court, this Court reviews the trial court record "to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Portfolio Recovery Assocs., LLC v. MacDonald*, 162 Idaho 228, 231, 395 P.3d 1261, 1264 (2017) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "Thus, this Court does not review the decision of the magistrate court." *Id.* (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013)). "Rather, we are 'procedurally bound to affirm or reverse the decision of the district court.' " *Id.* (quoting *Bailey*, 153 Idaho at 529, 284 P.3d at 973).

In an appeal from a grant of summary judgment, the appellate court's standard of review is the same as the standard used by the trial court in granting the summary judgment. *Sec. Inv.*

5

*Fund LLC. v. Crumb*, 165 Idaho 280, 285–86, 443 P.3d 1036, 1041–42 (2019), *overruled on other grounds by Millard v. Talburt*, ___ Idaho ___, 544 P.3d 748 (2024). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Est. of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Id.* "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review." *Sec. Inv. Fund*, 165 Idaho at 286, 443 P.3d at 1042 (quoting *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016)). "The interpretation of a statute is a question of law this Court reviews de novo." *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

"The granting or refusal of an injunction is a matter resting largely in the trial court's discretion." *Munden v. Bannock County*, 169 Idaho 818, 827, 504 P.3d 354, 363 (2022) (citing *Conley v. Whittlesey*, 133 Idaho 265, 273, 985 P.2d 1127, 1135 (1999)). On appeal, the reviewing court "applies an abuse of discretion standard to a decision to grant injunctive relief, asking '[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'" *Hood v. Poorman*, 171 Idaho 176, 187, 519 P.3d 769, 780 (2022) (alteration in original) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

### III.    ANALYSIS

**A. The district court did not err in affirming the magistrate court's grant of summary judgment in favor of Loertscher and Williams.**

Simmons argues the district court erred in affirming the magistrate court's conclusion that no herd district violations had occurred and that Loertscher and Williams were entitled to summary judgment on that issue. Simmons concedes that there is no genuine dispute as to the material facts. Instead, Simmons argues that the district court erred as a matter of law by applying Idaho Code section 25-2402's fencing requirement to the Herd District. Simmons argues that both the magistrate court's and the district court's interpretation of section 25-2402 effectively negated the statute's saving clause, which provides that herd districts in existence prior to the 1963 amendment

retained their identity and geographic definition and remained in "full force and effect." Because the Herd District existed in 1919 without a legal fence, Simmons argues section 25-2402's fencing requirement cannot apply to it. We disagree and conclude that the district court's interpretation of Idaho Code section 25-2402 is consistent with the plain language of the statute.

It is well understood that "[t]he interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole." *Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 657, 516 P.3d 73, 81 (2022) (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)). All words and provisions of the statute must be given effect so "that none will be void, superfluous, or redundant." *Melton v. Alt*, 163 Idaho 158, 163, 408 P.3d 913, 918 (2018) (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

> If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature.

*Breckenridge Prop. Fund.*, 170 Idaho at 657, 516 P.3d at 81 (quoting *Verska*, 151 Idaho at 893, 265 P.3d at 506). "A statute is ambiguous where the language is capable of more than one reasonable construction." *Melton*, 163 Idaho at 163, 408 P.3d at 918 (citing *Porter v. Bd. of Trs., Preston Sch. Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004)). However, "[a]mbiguity is not established merely because the parties present differing interpretations to the court." *Grace at Twin Falls, LLC v. Jeppesen*, 171 Idaho 287, 293, 519 P.3d 1227, 1233 (2022) (citation omitted); *see also Ada Cnty. Prosecuting Att'y v. 2007 Legendary Motorcycle*, 154 Idaho 351, 354, 298 P.3d 245, 248 (2013) ("[A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." (alteration in original) (citation omitted)).

To understand the meaning of Idaho Code section 25-2402 and the effect of the savings clause included in the 1963 amendment, it is helpful to review the history of herd district law in Idaho and the law relating to the liability of a livestock owner for damages caused by his stock straying onto the land of another. This Court previously reviewed that history in *Maguire v. Yanke*, 99 Idaho 829, 832–34, 590 P.2d 85, 88–90 (1978). Under the common law, a livestock owner had a duty to "fence in" his animals, and an adjoining landowner had no duty to "fence out" those animals. *Id.* at 832, 590 P.2d at 88 (first citing 4 Am. Jur. 2d *Animals* § 49 (1962); and then citing Restatement (Second) of Torts § 604(1) (1976)). Thus, livestock owners were liable for any

damage caused by their animals straying onto the land of another, regardless of whether that land was enclosed by a fence. *Id.*

However, Idaho rejected the common law, and instead held that the duty fell on landowners to fence out cattle lawfully roaming at large. *Id.* at 832, 590 P.2d at 88 (citations omitted). The only exception to the general rule that a landowner could not sue for damages caused by livestock straying onto his land was if the livestock owner willfully and deliberately drove his stock upon another's land, whether enclosed or unenclosed, without permission from the landowner. *Id.* (first citing *Lazarus v. Phelps*, 152 U.S. 81 (1894); and then citing *Swanson v. Groat*, 12 Idaho 148, 85 P. 384 (1906)).

To provide a remedy for landowners whose property was damaged by roaming livestock, the Idaho Legislature first passed fence laws. *See* I.C. § 25-2201 (providing that any landowner who encloses his property with a legal fence, as defined by sections 35-101 and 35-102, has a cause of action against the owner of animals that break through the enclosure). These laws became known as "fence-out" statutes in recognition of the fact that much of Idaho encompassed vast areas of government-owned land upon which cattle had historically been permitted to roam at large for pasturage. *Maguire*, 99 Idaho at 833, 590 P.2d at 89. The fence-out statutes preserved livestock owners' ability to allow their cattle to roam on these lands without incurring exorbitant fencing costs. *Id.*

Although Idaho adopted the fence-out rule as the prevailing policy, the Idaho Legislature also provided an important alternative to this policy by authorizing the creation of herd districts. *Id.* Herd districts provide "an alternative to landowners who wish to protect their land from damage caused by roaming stock, but do not wish or cannot afford to fence their land." *Id.* Idaho Code section 25-2401 grants county commissioners the authority to create herd districts within their county. If a majority of owners of taxable real property in an area petition the board of county commissioners for the creation of a herd district, livestock are prohibited from running at large within the district. *Id.* We explained in *Maguire* that, historically, an owner of land within the herd district could recover damages caused by animals straying onto his property, regardless of whether the land was fenced. *Id.* We further emphasized that herd district law "reinstates the English common law within that district, placing the duty on the livestock owner to fence in his stock and holding him liable for damages caused if his stock escapes onto another's land, regardless of whether that land is fenced or not." *Id.* We reiterated this principle in *Adamson v. Blanchard*, 133

Idaho 602, 606, 990 P.2d 1213, 1217 (1999) ("In herd districts, however, animals may not roam freely and owners incur a duty to keep livestock fenced." (citing *Whitt v. Jarnagin*, 91 Idaho 181, 187, 418 P.2d 278, 283 (1966))).

In 1963, the Idaho Legislature amended Idaho Code section 25-2402 to specifically exclude open range from any herd district:

> A majority of the land owners in any area ~~which shall include one or more voting precincts~~ *or district described by metes and bounds not including open range* and who are also resident in, and qualified electors of, the state of Idaho may petition the board of county commissioners in writing to create such area a herd district.

Act of Mar. 27, 1963, ch. 264, 1963 Idaho Sess. Laws 674 (italics and strikethrough in original). "Open range" was defined as "all unenclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam." 1963 Idaho Sess. Laws at 675. Prior to this amendment, the statute contained no definition of "open range," and "herd districts could be created in any part of Idaho." *Maguire*, 99 Idaho at 836, 590 P.2d at 92.

> It is clear the amendment of [Idaho Code section] 25-2402 by the inserting of a definition of "open range" was designed to protect the rights of livestock owners by prohibiting herd districts in areas where they historically grazed stock, rather than limiting the area where livestock owners were free to let their stock roam at large.

*Id.*

The 1963 amendment also provided that herd districts were required to designate in the ordinance governing the districts that they will not apply to or cover livestock straying from open range into the district unless the district is enclosed by a legal fence:

> Such petition shall describe the boundaries of the said proposed herd district, and shall designate what animals of the species of horses, mules, asses, cattle, swine, sheep and goats it is desired to prohibit from running at large, also prohibiting said animals from being herded upon the public highways in the district; *and shall designate that the herd district shall not apply to nor cover livestock, excepting swine, which shall roam, drift or stray from open range into the district unless the district shall be enclosed by lawful fences and cattle guards in roads penetrating the district so as to prevent livestock, excepting swine, from roaming, drifting or straying from open range into the district . . . .*

1963 Idaho Sess. Laws at 674–75 (italics in original). Thus, the 1963 amendment prohibited the inclusion of open range in a herd district and reinstated Idaho's "fence-out" rule with respect to cattle straying from open range.

9

Importantly, the 1963 amendment included a savings clause that preserved recognition of pre-existing herd districts: "Provided, any herd district heretofore established shall retain its identity, geographic definition, and remain in full force and effect, until vacated or modified hereafter as provided by Section 25-2404, Idaho Code, as amended." 1963 Idaho Sess. Laws at 675. Owners of land in a pre-established herd district were not required to submit a new petition to re-create the herd district, describing the land sought to be included therein "by metes and bounds." 1963 Idaho Sess. Laws at 674. Their land remained in the pre-established herd district, and they remained protected by the common law's "fence-in" rule with respect to all livestock straying from *within* the district, or from livestock straying from land *outside* the district that was *not* designated as open range. If landowners within the district also wished to keep out cattle straying from open range, the board of county commissioners could levy an annual property tax on all property located within the district, pursuant to Idaho Code section 25-2401, to pay for the costs of constructing and maintaining a fence around the perimeter of the herd district at large. I.C. § 25-2401(2).

Thus, although the fencing requirement reinstated Idaho's "fence-out" rule to the district as an entity with respect to cattle straying from open range, the landowners within the district remained protected by herd district rules with respect to livestock straying from within the district. Accordingly, the land within a pre-established herd district "retain[ed] its identity [and] geographic definition," and landowners remained protected by the "full force and effect" of herd district rules.

Turning to the present matter, it is undisputed that the Simmons Parcel is located within a herd district and the Loertscher Allotment is designated as open range. Simmons brought his claim against Loertscher and Williams under Idaho Code section 25-2408, which provides that the owner of animals permitted to run at large in violation of a herd district ordinance shall be liable to any person who suffers "damage from the depredations or trespasses of such animals . . . ." I.C. § 25-2408. In defense, Loertscher and Williams have asserted that they are shielded from liability under Idaho Code section 25-2402's fence-out provision. The magistrate court ruled in favor of Loertscher and Williams, concluding that the Herd District provisions were inapplicable because the Loertscher Allotment, from where the cattle strayed, is open range and the Herd District is not enclosed by a legal fence. The magistrate court applied the fence-out provision from section 25-2402 to the Herd District even though the Herd District was established without a legal fence prior to the 1963 amendment. The magistrate court concluded that the savings clause in section 25-2402

10

"provides simply that any herd district created prior to the enactment of this statute is still a valid herd district and the ranges and boundaries of the previously established herd districts is [sic] unaltered by the statute." The district court affirmed this interpretation.

We conclude that the district court's interpretation of section 25-2402 is consistent with the history of herd district law and the effect of the 1963 amendment. The plain language of the savings clause in section 25-2402 protects the legal existence of herd districts lawfully created prior to the 1963 amendment. The language in question does not state that pre-existing herd districts were exempted from the fence-out language contained in the 1963 amendment. Accordingly, the district court did not err in affirming the magistrate court's grant of summary of judgment in favor of Loertscher and Williams.

**B. The district court did not err in affirming the magistrate court's conditions governing the retrieval of cattle from Simmons's Parcel.**

In addition to granting summary judgment in favor of Loertscher and Williams for Simmons's claims regarding herd district violations, the magistrate court entered judgment imposing conditions on how Loertscher and Williams may retrieve their cattle that have strayed onto Simmons's Parcel. The district court likewise affirmed that judgment. Simmons contends that the district court infringed on his property rights by affirming these conditions, which differ from the conditions that Simmons proposed. Simmons argues that because the district court did not engage in any analysis of the issues and did not cite any law granting the magistrate court the authority "to supplant the reasonable limitations the landowner puts on the chattel owner's entry to retrieve the chattel," the district court erred in affirming the magistrate court's specifications for Loertscher's and Williams's retrieval of their cattle from Simmons's Parcel.

It appears that the reasonableness of Simmons's conditions first arose in connection with Simmons's request for injunctive relief. Loertscher and Williams addressed the claim in their motion for summary judgment, arguing that they had a common law right to enter Simmons's Parcel, at a reasonable time and in a reasonable manner, for the purposes of retrieving their cattle. Simmons filed an opposition to Loertscher and Williams's motion but did not respond to their argument that they had a common law right to enter his property. While Simmons listed his four conditions for their entry onto his property, he presented no legal argument or authority supporting his contention that his conditions were reasonable.

11

The magistrate court agreed with Loertscher and Williams that they have the common law right to enter Simmons's Parcel, at a reasonable time and in a reasonable manner, to retrieve their cattle, but required Loertscher and Williams to notify Simmons by text or phone call of the need to enter his land prior to doing so. The magistrate court also authorized Loertscher and Williams to remain on Simmons's land "for only as long as is necessary to retrieve their cattle" and to "restrict themselves solely to the portions of Simmons' land where the cattle have roamed," but permitted them to "reasonably carry guns or other weapons for protection while retrieving their cattle."

On appeal to the district court, Simmons continued to argue that the cattle were illegally on his property, and, as such, he had the right to place conditions upon Loertscher's and Williams's entry onto his property to retrieve them. Simmons argued that the magistrate court cited no law that gave the court discretion to override Simmons's reasonable limitations on retrieval, and the magistrate court therefore abused its discretion in making its own reasonable determinations for entry.

The district court affirmed the magistrate court, explaining that Simmons provided no legal argument or authority to demonstrate how or why the magistrate court's specifications for entry were a violation of his property rights. Recognizing that courts do not consider issues not supported by argument or authority, the district court declined to consider the issue any further "other than to say that this [c]ourt does not believe that the magistrate court abused its discretion in this matter."

We have repeatedly stated that "an issue presented on appeal must have been properly framed and preserved in the court below." *Fed. Home Loan Mortg. Corp. v. Butcher*, 157 Idaho 577, 581, 338 P.3d 556, 560 (2014) (quoting *Wood v. Wood*, 124 Idaho 12, 16–17, 855 P.2d 473, 477–78 (Ct. App. 1993)); *see also* I.A.R. 35(a). To preserve an issue for appeal, the party must have "properly present[ed] the issue with argument and authority to the trial court below . . . ." *Terrell v. Paradis de Golf Holding, LLC*, 171 Idaho 877, 880, 527 P.3d 480, 483 (2023).

In this case, while Simmons raised the issue of the reasonableness of his conditions for cattle retrieval to the magistrate court below, he failed to provide any argument or authority to the trial court in support of his position. He also failed to present argument or authority opposing Loertscher and Williams's assertion that they had a common law right to enter Simmons's Parcel, at a reasonable time and in a reasonable manner, to retrieve their cattle. Thus, Simmons did not

12

preserve this issue for appeal before the district court, and the issue is waived before this Court. Accordingly, we affirm the district court's decision as to this issue.

**C. Loertscher and Williams are entitled to attorney fees for the second issue raised on appeal.**

Simmons requests attorney fees on appeal under Idaho Code section 25-2408, which provides that a person damaged from the depredations or trespasses of animals running at large in violation of herd district provisions "shall have a lien upon said animals for the amount of damage done, and the cost of the proceedings to recover the same . . . ." However, we have held, as a matter of law, that the herd district provisions are inapplicable to this dispute. Accordingly, Idaho Code section 25-2408 is also inapplicable, and Simmons is not entitled to attorney fees under this statute.

Loertscher and Williams request attorney fees under Idaho Code section 12-121, which provides attorney fees to the prevailing party when the court "finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "When awarding fees under section 12-121, '[a]pportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation.' " *Kelly v. Kelly*, 171 Idaho 27, 49, 518 P.3d 326, 348 (2022) (alteration in original) (quoting *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 183, 395 P.3d 393, 402 (2017)). Although Loertscher and Williams have prevailed in this appeal, we do not find Simmons's appeal on the first issue, regarding the application of Idaho Code section 25-2402's fencing requirement to the Herd District, frivolous or without foundation. However, we have concluded that Simmons waived the second issue on appeal, regarding the conditions for Loertscher's and Williams's retrieval of cattle from the Simmons's parcel by failing to properly support his contention with argument and authority before the trial court. Consequently, we find that Simmons's appeal on that issue is frivolous and without merit. Therefore, we award reasonable attorney fees to Loertscher and Williams for the portion of the appeal corresponding to the second issue relating to the conditions for entering Simmons's land to retrieve cattle that have strayed.

## IV.    CONCLUSION

For the reasons stated above, we affirm the district court's decision. Loertscher and Williams are awarded their reasonable attorney fees on the second issue on appeal, the conditions

13

of retrieval of cattle, pursuant to Idaho Code section 12-121. Loertscher and Williams are also awarded their reasonable costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices MOELLER and MEYER CONCUR.

Justice BRODY did not participate in the Opinion.