**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 43527-2015**

| | | |
|---|---|---|
| BURNS CONCRETE, INC., an Idaho corporation, and BURNS HOLDINGS, LLC, an Idaho limited liability company, | ) ) ) ) | Idaho Falls, September 2016 Term |
| Plaintiffs-Appellants, | ) ) | 2016 Opinion No. 110 |
| v. | ) ) | Filed: November 1, 2016 |
| TETON COUNTY, a political subdivision of the State of Idaho, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Teton County. Hon. Dane H. Watkins, Jr., District Judge.

The judgment of the district court is <u>vacated</u>.

Brook B. Bond, Parsons Behle & Latimer, Boise, argued for appellants.

Kathy Spitzer, Teton County Prosecuting Attorney, Driggs, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Teton County from a judgment holding that the force majeure clause in a written contract between the county and a developer did not apply to the developer's failure to obtain zoning approval in order to construct the cement plant required in the agreement. We hold that the force majeure clause was broad enough to apply, vacate the judgment of the district court, and remand this case for further proceedings.

**I.**
**Factual Background.**

Burns Holdings, LLC ("Developer") purchased a 6.5-acre parcel of property located in the unincorporated part of Teton County ("County") in order to build a ready-mix concrete

manufacturing facility on the property. The property was zoned C-3 (commercial), and Developer applied to change the property's zoning to M-1 (light industrial). On February 26, 2007, the County approved the zoning change with conditions, one of which was that the Developer enter into a development agreement with the County pursuant to Idaho Code section 67-6511A.

The real property was located within the area of city impact of the City of Driggs ("City"). The County and the City had agreed pursuant to Idaho Code section 67-6526 that the City's zoning laws would apply in the area of impact. The City zoning ordinance provided that "[a]ny building or structure or portion thereof hereafter erected shall not exceed forty-five (45) feet in height unless approved by conditional use permit." Developer filed an application for a conditional use permit on June 13, 2007, seeking permission to exceed the height limitation because it wanted to build a facility that was 75 feet in height. The application was first reviewed by the City planning and zoning department, and on July 11, 2007, it recommended approval. On July 19, 2007, the application was then sent to the County.

On August 31, 2007, the County and the Developer entered into the development agreement. It recited that the "Developer intends to operate a Ready-Mix Concrete Manufacturing Facility (a 'Facility') on the property" and that "[a]ttached as **Exhibit 'B' - Site Plan, and Exhibit 'C' - Building Elevations**, and by this reference incorporated herein are plans for construction of Developer's intended permanent facility ('Permanent Facility')." The attached Exhibit C showed a building 75 feet in height. The agreement then stated that "[i]mmediately upon execution of this Agreement, Developer shall order and commence construction of the Permanent Facility" and that "the Developer shall erect and operate a temporary concrete batch plant on site as shown in **Exhibit 'B,'**" which was a picture of a temporary concrete batch plant. The agreement required the Developer to improve the access to the property from the state highway as required by the City, to construct a concrete block wall along the boundaries of the property, and to landscape the property, and it provided that the real property would be used exclusively for the operation of a ready-mix concrete manufacturing facility and that the contract would run with the real property in perpetuity.

On November 15, 2007, the County denied the Developer's request for the conditional use permit. The Developer sought judicial review of the denial, and this Court affirmed the denial on the alternative ground that the Local Land Use Planning Act required a variance

2

permit, not a conditional use permit, to modify the height requirements in a zoning ordinance. *Burns Holdings, LLC v. Teton Cnty. Bd. of Comm'rs*, 152 Idaho 440, 444, 272 P.3d 412, 416 (2012). Upon the issuance of the opinion, the legislature amended the Local Land Use Planning Act to permit the use of a conditional use permit to make exceptions or waivers to zoning ordinance standards, including those matters that were subject to a variance permit. Ch. 334, § 2, 2012 Idaho Sess. Laws 926, 928–29. This change was effective on April 5, 2012.

The Developer was unable to commence construction of the Permanent Facility without an amendment to the zoning ordinance, although it did erect the temporary concrete batch plant. By letter dated April 9, 2012, the County demanded that the Developer remove the temporary facility. At some point, the Developer applied for a variance permit to construct a building that was 75 feet in height, and the County denied that application on September 13, 2012.

The development agreement provided that the Developer was to commence construction of the permanent facility immediately upon the execution of the agreement; that the permanent facility was to be completed within eighteen months; and that if construction was not completed within that time period, the County could revoke the authority to operate the temporary facility. The agreement included a force majeure clause stating that the requirement that the permanent facility be completed within eighteen months was "subject to delays resulting from weather, strikes, shortage of steel or manufacturing equipment or any other act of force majeure or action beyond Developer's control." By letter dated October 4, 2012, the County informed the Developer that the County had revoked the Developer's authority to operate the temporary facility pursuant to the terms of the development agreement. The County then sought to revert the zoning of the property to its previous zoning, and the Developer filed this lawsuit seeking: a declaratory judgment that the County is estopped from rezoning the property and that the time period for construction of the permanent facility was tolled by the force majeure clause; a judgment rescinding the contract and awarding the Developer damages; and an award of damages for unjust enrichment. The County answered and filed a counterclaim seeking damages for breach of contract and a declaratory judgment stating that the force majeure clause did not excuse nonperformance and that the temporary facility must be removed.

The County filed a motion for summary judgment on its counterclaim. After the motion was briefed and argued, the district court granted the motion, holding that the force majeure clause only applies to unforeseeable circumstances, that the refusal of the County to grant zoning

approval of a 75-foot structure was foreseeable, that such eventuality must have been included in the force majeure clause, and that the failure to include it meant that the Developer assumed the risk of such occurrence. The Developer filed a motion for reconsideration, and the district court, after briefing and argument, denied the motion. The court also awarded the County court costs, including attorney fees, pursuant to the terms of the development agreement. The Developer then timely appealed.

**II.**
**Did the District Court Err in Granting the County's Motion for Summary Judgment?**

The issue on this appeal is the scope of the force majeure clause in the development agreement, which provided that the requirement that the Developer complete construction of the permanent facility within eighteen months was "subject to delays resulting from weather, strikes, shortage of steel or manufacturing equipment or any other act of force majeure or action beyond Developer's control." The district court held that the force majeure clause was confined to the same kinds of things mentioned, so the clause was limited to events such as "weather, strikes, [and] shortage of steel or manufacturing equipment" and that the words "or any other act of force majeure or action beyond Developer's control" could not expand the scope of the clause beyond the types of events expressly mentioned. The court also held that the failure to obtain zoning approval for the permanent facility was foreseeable, and therefore that eventuality should have been included in the force majeure clause in order for the clause to apply to it.

The force majeure clause is unambiguous. "Interpretation and legal effect of an unambiguous contract are questions of law over which this Court exercises free review. In construing a written instrument, this Court must consider it as whole and give meaning to all provisions of the writing to the extent possible." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000) (citations omitted).

The failure of the County to give zoning approval for building the 75-foot-high permanent facility was not reasonably foreseeable because the development agreement required the Developer to construct a permanent facility that was 75 feet high. The agreement stated:

> This development and operation shall be subject to the following terms and conditions, in addition to the other terms hereof:
> (i) Developer intends to operate a Ready-Mix Concrete Manufacturing Facility (a "Facility") on the property.

4

. . . .

    (iii) Attached as **Exhibit "B" - Site Plan, and Exhibit "C" - Building Elevations**, and by this reference incorporated herein are plans for construction of Developer's intended permanent facility ("Permanent Facility").

    (iv) Immediately upon execution of this Agreement, Developer shall order and commence construction of the Permanent Facility. The installation of the Permanent Facility shall be completed within eighteen (18) months of execution of this Agreement by the County, subject to delays resulting from weather, strikes, shortage of steel or manufacturing equipment or any other act of force majeure or action beyond Developer's control.

The development agreement defined the permanent facility as being a facility as set forth in Exhibits B and C to the agreement, and Exhibit C set forth the building elevations. The building elevations shown on that exhibit unambiguously showed a facility that was 75 feet in height. Thus, to comply with the agreement, the Developer would be required to build a facility that was 75 feet in height. It would not be foreseeable that the County would require the Developer to build a facility 75 feet in height and then prevent the Developer from doing so.

The wording of the force majeure clause does not limit the clause's application to the types of events mentioned. The clause states that it applies to "delays resulting from weather, strikes, shortage of steel or manufacturing equipment *or any other act of force majeure or action beyond Developer's control.*" (Emphasis added.) The wording "or any *other* act of force majeure" could certainly be read as referring to some other act that was of the type previously mentioned. However, the clause then states, "or action beyond Developer's control." That shows that the "action beyond Developer's control" was something other than the type of acts that were previously mentioned in the clause as being an act of force majeure. The County's conduct certainly constitutes an action beyond the Developer's control. Therefore, the district court erred in holding that the force majeure clause did not apply in this case.

The Developer raised other issues on appeal, but the district court's ruling on those issues was based upon the court's interpretation of the force majeure clause. Therefore, we need not address those issues on appeal.

### III.
### Is the County Entitled to an Award of Attorney Fees on Appeal?

The County seeks an award of attorney fees on appeal pursuant to a provision in the development agreement, which states, "If any party shall bring suit against the other party to

enforce this agreement, the prevailing party shall be entitled to reasonable attorney fees and costs." Because the County is not the prevailing party on appeal, it is not entitled to an award of attorney fees under that provision.

## IV.
### Conclusion.

We vacate the judgment of the district court and its award of court costs and attorney fees to the County, and we remand this case for further proceedings that are consistent with this opinion.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**