# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 46827/47496

BURNS CONCRETE, INC., an Idaho
Corporation, and BURNS HOLDINGS, LLC,
an Idaho limited liability company,

    Plaintiffs-Counterdefendants-
    Respondents-Cross Appellants,

v.

TETON COUNTY, a political subdivision of
the State of Idaho,

    Defendant-Counterclaimant-
    Appellant-Cross Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2020 Term

Opinion Filed: November 2, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho,
Teton County. Dane H. Watkins, Jr., District Judge.

The district court's grant of partial summary judgment on the issue of breach of
contract is <u>affirmed</u>. The judgment of the district court is <u>vacated</u>. The district court's
orders on attorney fees are <u>vacated</u>. The case is <u>remanded</u> for a recalculation of
damages and an explanation of the attorney fee award.

Billie J. Siddoway, Teton County Prosecuting Attorney, Driggs, for appellant-cross
respondent. Billie Siddoway argued.

Parsons Behle & Latimer, Boise, for respondents-cross appellants. Robert Burns
argued.

---

BRODY, Justice.

This appeal arises from a dispute over the construction of a ready-mix concrete
manufacturing facility in Teton County. In 2007, Burns Holdings entered into a development
agreement with Teton County regarding property owned by Burns Concrete. The development
agreement required the construction of a permanent concrete manufacturing facility on the property
within 18 months of the execution of the agreement, but allowed operation of a temporary facility in
the meantime. Burns Concrete, the concrete company that would operate the facility, and Burns

1

Holdings, a holding company that was to eventually take title to the property, wanted to build a permanent facility that was 75-feet tall, but the applicable zoning ordinance limited building heights to 45-feet. The County denied Burns Holdings' application for a conditional use permit and its subsequent application for a variance to exceed the height limit. The Burns Companies operated the temporary facility for several years but never constructed the permanent facility.

In 2012, the County sent written notice revoking the authority to operate the temporary facility and demanding that the temporary facility be removed. The Burns Companies subsequently filed this action, stating claims for breach of contract, declaratory judgment, and unjust enrichment. The County counterclaimed, alleging breach of contract and seeking declaratory judgment for the removal of the temporary facility. This began a multi-year period of litigation that included two appeals to this Court, each followed by a remand to the district court. This case has returned to us again, this time as a result of the parties' cross-appeals from the district court's grant of partial summary judgment in favor of the Burns Companies on their breach of contract claim, its award of $1,049.250.90 in damages, and its award of attorney fees. We affirm the district court's grant of partial summary judgment on the issue of breach of contract, but vacate the district court's judgment for a recalculation of damages. In its recalculation of damages, the district court is instructed to reverse its reduction of damages by the difference between the Temporary Facility's sales and cost of sales. We vacate the district court's award of attorney fees and remand the matter for an explanation of the district court's reduction of requested attorney fees.

## I.  FACTUAL AND PROCEDURAL BACKROUND

### A. Factual Background

Burns Holdings, LLC and Burns Concrete, Inc. are Idaho business entities. Kirk Burns is the president of Burns Concrete and the manager of Burns Holdings. Burns Holdings and Burns Concrete are referred to together as "the Burns Companies."

In 2006, Burns Concrete purchased a 6.5-acre property ("the Property") in Teton County. Burns Holdings applied to change the zoning of the Property from C-3 (commercial) to M-1 (light industrial) in order to build and operate a ready-mix concrete manufacturing facility on the Property. On February 26, 2007, the County approved the zone change with certain conditions, including that Burns Holdings enter into a development agreement with the County pursuant to Idaho Code section 67-6511A.

The Property was located within the City of Driggs' impact area, where the County and

2

Driggs had agreed, pursuant to Idaho Code § 67-6526, that the Driggs zoning laws would apply. Driggs' zoning ordinance provided that "any building or structure or portion thereof" could not exceed 45 feet in height unless approved by conditional use permit (CUP).

On June 13, 2007, Burns Holdings applied for a CUP to build a permanent facility (the "Permanent Facility") 75 feet in height. The application was first reviewed by Driggs' planning and zoning department, which unanimously recommended approval by the County. The application was sent to the County.

On August 31, 2007, Burns Holdings and the County entered into a development agreement (the "Development Agreement"). Paragraph 2.b of the Development Agreement required construction of the Permanent Facility to commence immediately upon execution. Importantly, Paragraph 2.b also required the construction of the Permanent Facility in accordance with elevation schematics showing a building 75 feet in height. It further required construction to be completed within 18 months, subject to acts of force majeure beyond Burns Holdings' control. Paragraph 2.b also required the construction of a temporary facility (the "Temporary Facility"). The County had the authority to revoke the authority to operate the Temporary Facility if the Permanent Facility was not completed within the allowable time period. Paragraph 9 provided that the Development Agreement could be terminated, and the Property's zoning reverted, if Burns Holdings or its successor failed to comply with the terms of the Development Agreement. Paragraph 10 required Burns Holdings to comply with all applicable laws. Paragraph 12 provided that the Development Agreement would run with the land.

On November 15, 2007, the County denied Burns Holdings' CUP application. Burns Holdings sought judicial review of the denial. The district court upheld the County's CUP denial and Burns Holdings appealed. This Court affirmed on the alternative ground that the Local Land Use Planning Act ("LLUPA") required a variance, not a CUP, to modify the height requirements in a zoning ordinance. *Burns Holdings, LLC v. Teton Cnty. Bd. of Comm'rs*, 152 Idaho 440, 272 P.3d 412 (2012) ("Burns 2012"). Subsequently, Burns Holdings applied for a zoning variance to build the Permanent Facility to a height of 75 feet. The County denied this request as well.

By letter dated April 9, 2012, the County revoked the authority to operate the Temporary Facility and demanded that the Temporary Facility be removed by July 1, 2012. On October 4, 2012, the County sent another letter to Kirk Burns reminding him of the April 9 demand to remove the Temporary Facility and requesting removal activity to begin immediately. In response, counsel for

3

the Burns Companies sent a letter to the County asserting that the County's October 4 letter constituted a breach of the Development Agreement because the Burns Companies' time limit for constructing the Permanent Facility was tolled by the Development Agreement's force majeure clause and the County had failed to provide the requisite notice of default and opportunity to cure. By letter dated November 5, 2012, the County's prosecuting attorney notified the Burns Companies' that the County rejected their demands, asserted that the force majeure clause was inapplicable, and threatened to file suit to compel the Burns Companies' removal of the Temporary Facility.

Subsequently, Burns Concrete executed a quitclaim deed in which it transferred 50% of its interest in the Property to Burns Holdings. A few days later, Burns Concrete and Burns Holdings executed an "Assignment and Assumption Agreement." Through the Assignment and Assumption Agreement, Burns Holdings transferred to Burns Concrete an undivided interest in all of Burns Holdings' rights arising from the Development Agreement. Similarly, Burns Concrete transferred to Burns Holdings an undivided interest in all of Burns Concrete's claims related to the Property "and/or" the Development Agreement.

## B. Procedural History

On May 21, 2013, the Burns Companies filed a complaint against the County that stated causes of action for breach of contract and rescission, declaratory judgment, and unjust enrichment. The County counterclaimed, alleging breach of contract and seeking declaratory judgment for the removal of the Temporary Facility. The Burns Companies subsequently filed a motion for partial summary judgment on the liability components of its claims, and the County filed a cross-motion for summary judgment on each of its claims.

Following a hearing, the district court entered a memorandum decision and order on the parties' cross-motions for summary judgment (the "first summary judgment order") denying the Burns Companies' motion for partial summary judgment and granting, in part, the County's motion for summary judgment. The district court held that because the County's refusal to grant zoning approval of a 75-foot structure was foreseeable, the force majeure clause did not excuse the Burns Companies' failure to complete construction of the Permanent Facility within 18 months. It then entered a final judgment (the "first final judgment") in accordance with its order.

The Burns Companies filed a timely notice of appeal from the first final judgment. This Court vacated the judgment of the district court and remanded the case for further proceedings. *Burns Concrete, Inc. v. Teton Cnty.*, 161 Idaho 117, 384 P.3d 364 (2016) ("Burns 2016"). We held

4

that the force majeure clause applied because the County's decision to withhold zoning approval for a 75-foot Permanent Facility was not foreseeable given the terms of the Development Agreement and not within the Burns Companies' control. *Id.* at 121, 384 P.3d at 368.

Following remand, the Burns Companies filed a renewed motion for partial summary judgment. They sought summary judgment on their declaratory judgment claim and on the liability components of their breach of contract and rescission claims, leaving the issue of damages for trial. The district court entered an order (its "second summary judgment decision") granting the Burns Companies' renewed motion for partial summary judgment. The district court granted summary judgment on the liability component of the Burns Companies' breach of contract and rescission claims. The Burns Companies had withdrawn their request for summary judgment on their declaratory judgment claim and also, apparently, on their unjust enrichment claim.

The County then filed a motion in limine to exclude evidence of reliance damages at trial, arguing that only expectation damages were appropriate in this case. On the same day, the County filed a motion for reconsideration of the second summary judgment decision. The district court entered a memorandum decision and order in which it granted in part and denied in part both motions. Specifically, the district court denied the County's motion to reconsider the grant of summary judgment in favor of the Burns Companies on their breach of contract claim, but vacated the portion of its previous order granting rescission of the Development Agreement. The district court denied the County's motion in limine to the extent it sought to exclude evidence of reliance damages, but allowed the admission of evidence of losses Burns Holdings would have suffered if the County had not breached the Development Agreement. Finally, it deferred any determination as to prejudgment interest and whether Burns Holdings, as opposed to Burns Concrete, incurred all claimed damages.

Trial was held on the issue of damages. Allen Barger, Burns Concrete's controller, testified regarding the various exhibits he had prepared in support of the Burns Companies' damages claims. He explained that Exhibit 8 was a summary all the expenditures that Burns Concrete had made in order to "get the [Temporary Facility] up and running." Exhibit 8 was admitted. It contained over 7,000 line items, each associated with a particular category of expense. Barger testified that the total amount of damages listed on Exhibit 8 was $1,905,344.78, exclusive of prejudgment interest.

Kirk Burns testified that shortly before Kathy Rinaldi's election to the Teton County Board of County Commissioners, she wrote letters to concrete customers that effectively said, "[d]on't use

5

Burns Concrete." Kirk Burns testified that this had an adverse effect on his companies' operations. He also testified that following the County's denial of the CUP request, newspapers ran articles that effectively stated his concrete plant was "extinguished." This "pretty much stopped all the customers" because they thought he could no longer run the plant. The County's expert witness Richard Hoffman, a forensic accountant, testified that the Burns Companies would have suffered a loss in operating the Temporary Facility even if the County had not breached the Development Agreement. However, he also testified that the Burns Companies would have produced a net income by 2017.

Following trial, but before the district court entered its findings of fact and conclusions of law, the Burns Companies entered into a contingency fee agreement with Parsons Behle & Latimer ("Parsons Behle"). The Burns Companies had initially contracted with their counsel on an hourly basis, plus costs. However, by the time of trial, the Burns Companies allegedly were no longer able to pay Parsons Behle "on a reasonably current basis." Therefore, they entered into a contingency fee agreement. The contingency fee agreement required the Burns Companies to pay triple the amount of fees that were not paid within 120 days of their invoice dates, but only out of damages recovered from the County.

Subsequently, each party filed proposed findings of fact and conclusions of law. The County noted that it had abandoned its counterclaims prior to trial. The district court then issued its findings of fact and conclusions of law. It found that "Burns Concrete's decision to cease operations in 2010 was based, at least in part, on the existence of an unfavorable environment in Teton County, created by the actions of [the County]." It also found that if Burns Concrete had been able to continue operating the Temporary Facility, it would have made a net profit by 2017. It further found that only $1,461,393.53 of the Burns Companies' expenditures were made in reasonable reliance on the Development Agreement, but it did not identify the specific line items of the expenditures it had denied. Finally, the district court further reduced the amount of damages awardable by subtracting the difference between Burns Concrete's sales and the cost of sales arising from operation of the Temporary Facility, arriving at a final damage award of $1,049,250.90. In relevant part, the district court made the following conclusions of law: (1) the County was liable to both Burns Holdings and Burns Concrete for its breach of the Development Agreement; (2) it would not revisit its previous holding that rescission was not available as a matter of law; (3) the Burns Companies were entitled to $1,049,250.90 in reliance damages; (4) the County did not establish that in the absence of its

6

breach, the Burns Companies would have suffered losses entitling the County to a reduction of damages; and (5) the Burns Companies were not entitled to prejudgment interest.

The parties then each filed motions for additional and amended findings of fact and conclusions of law, and the Burns Companies filed a motion for reconsideration on the issue of rescission. The district court entered a memorandum decision and order: (1) denying the County's motion for additional findings of fact; (2) granting in part and denying in part the Burns Companies' motion for amended and additional findings of fact and conclusions of law; and (3) denying the Burns Companies' motion for reconsideration on the issue of rescission. The district court also denied the Burns Companies' claim for declaratory and injunctive relief on the grounds that they were untried, but did agree that the 18-month time limit was tolled pursuant to this Court's decision in *Burns 2016*. The district court then entered a final judgment (the "second final judgment") jointly awarding the Burns Companies $1,049,250.90 in damages. The judgment also provided that the running of the 18-month period for construction of the Permanent Facility would be tolled in accordance with *Burns 2016*. The County filed a timely notice of appeal from the second final judgment and the Burns Companies filed a timely notice of cross-appeal from the second final judgment.

Around the same time that those appeals were filed, the Burns Companies filed a memorandum of attorney fees and costs (the "first fee request"), which the County opposed. The district court issued a memorandum decision and order on costs and fees (the "first fee order") in which it held, in relevant part, that the Development Agreement authorized an award of fees to both Burns Concrete and Burns Holdings and the Burns Companies were entitled to $792,529.25 of their requested $1,071,753.73 in attorney fees. While the district court's decision walked through the factors set forth in Rule 54(e) of the Idaho Rules of Civil Procedure, the district court's decision did not explain why a reduction of this amount was appropriate. The County filed a timely notice of appeal from the first fee order, and the Burns Companies filed a motion seeking supplemental fees based on legal services billed after it filed its first fee request, as well as fees that had become subject to the contingency fee agreement.

The district court then filed its second fee order, in which it awarded the Burns Companies $16,254.50 of their requested $88,603.50 in additional fees. Again, the district court did not explain why a reduction of this amount was warranted. The Burns Companies filed a timely notice of cross-appeal from the district court's first and second fee orders.

7

## II. ANALYSIS

### A. The district court did not err when it awarded damages to both Burns Concrete and Burns Holdings.

The County contends the district court erred when it held the County liable to both Burns Holdings and Burns Concrete. The County reasons that Burns Holdings was a party to the Development Agreement, but did not suffer any damages. Conversely, Burns Concrete may have incurred expenses to construct the Temporary Facility, but it was not a party to the Development Agreement. In its findings of fact and conclusions of law, the district court concluded as a matter of law that the County was liable to both companies, reasoning that the Burns Companies assigned to each other an undivided interest in their claims arising from the Development Agreement and they have had an equal ownership interest in the Property since 2013. We agree with the Burns Companies that the district court did not err.

This Court's review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019). We exercise free review over the trial court's conclusions of law to determine whether the trial court correctly stated the applicable law and whether its legal conclusions are sustained by the facts found. *Kunz v. Nield, Inc.*, 162 Idaho 432, 438, 398 P.3d 165, 171 (2017).

Paragraph 12.b of the Development Agreement specifically provides that the Development Agreement inures to the benefit of and is enforceable by the parties and their assigns: "The parties agree that this Agreement shall run with the land and bind the property in perpetuity, and shall inure to the benefit of and be enforceable by the parties, and any of their respective legal representatives, heirs, successors, and assigns." In this case, Burns Holdings assigned to Burns Concrete an undivided interest in Burns Holdings' rights and benefits and duties and obligations in the Development Agreement. The assignment stated:

> **2. Assignment and Assumption of Agreement and Claims.** Burns Holdings hereby assigns and delegates, respectively, to Burns Concrete an undivided interest in all of Burns Holdings' rights and benefits and duties and obligations in, to, and under the Agreement, including all claims, causes of action, and rights of enforcement of Burns Holdings related to the Agreement, that are now in existence or may hereafter arise; and Burns Concrete hereby accepts and assumes, respectively, all such rights and benefits and duties and obligations.

It is true that in order to be effective, an assignment must "confer a complete and present right on the

8

transferee." *First State Bank of Eldorado v. Rowe*, 142 Idaho 608, 612, 130 P.3d 1146, 1150 (2006). Here that requirement was satisfied. The language of the Assignment and Assumption Agreement makes it clear that Burns Holdings effected a complete transfer of a present interest in the Development Agreement. The fact that it was an undivided partial interest is of no moment. There is nothing in our case law that precludes the assignment of a partial interest so long as the transfer is complete.

Similarly, Burns Concrete assigned to Burns Holdings an undivided interest in all of Burns Concrete's present or future claims related to the Property and the Development Agreement. The assignment stated:

> **3. Assignment of Claims.** Burns Concrete hereby assigns to Burns Holdings an undivided interest in all claims and causes of action of Burns Concrete, whether sounding in or arising under contract, statute, ordinance, or otherwise, related to the Property and/or the Agreement that are now in existence or may hereafter arise.

Like Burns Holdings' assignment, this was a complete transfer of a partial interest. Again, nothing in our case law precludes the assignment of a partial interest as long as the transfer is complete.

The district court correctly stated the applicable law and its legal conclusions regarding the County's liability to both Burns Companies are sustained by its findings. We are satisfied that both Burns Holdings and Burns Concrete are the real parties in interest and that damages can properly be awarded to both of them.

**B. The district court did not err in granting summary judgment to the Burns Companies on the issue of breach of contract.**

The County contends that the district court erred in granting partial summary judgment to the Burns Companies on the issue of breach of contract. The district court held that the County breached the Development Agreement in two ways: (1) it revoked the Burns Companies' authority to operate the Temporary Facility in contravention of Paragraph 2.b of the Development Agreement and failed to provide the Burns Companies with notice of default and opportunity to cure; and (2) it violated the implied covenant of good faith and fair dealing. The County contends these determinations were error for three reasons: (1) the County had alternative support for its demand that the Burns Companies cease operations and remove the Temporary Facility, (2) its demand for removal of the Temporary Facility did not violate the implied covenant of good faith and fair dealing, and (3) the Burns Companies were given sufficient notice and opportunity to cure.

When reviewing rulings on summary judgment motions, this Court applies the same standard that the trial court did. *Sec. Inv'r Fund LLC v. Crumb*, 165 Idaho 280, 285, 443 P.3d 1036, 1041

(2019). The trial court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* at 286, 443 P.3d at 1042. The same standard of review applies, at both the trial and appellate levels, to motions for reconsideration of summary judgment rulings. *Id.*

### 1. The County's asserted alternative support for its revocation of authority to operate the Temporary Facility is a new argument on appeal.

The district court held that the County breached the Development Agreement by ordering the cessation of operations and removal of the Temporary Facility. It reasoned that *Burns 2016* established that the 18-month time limit to construct the Permanent Facility had been tolled by the County's unforeseeable denial of required zoning approvals. As an alternative argument against the district court's conclusion regarding this breach, the County argues that it had other grounds justifying its revocation of authority to operate the Temporary Facility. Specifically, it argues that that the Temporary Facility violates the height restriction, like the proposed Permanent Facility, because it is approximately 65-feet high.

This argument was not preserved. Our review is limited to the evidence, theories and arguments that were presented below. *Nelson v. Franklin Grp., Inc.*, 166 Idaho 702, ___, 462 P.3d 1166, 1169 (2020). The County previously raised this argument in a cross-motion for summary judgment filed before *Burns 2016*. The district court agreed with the County, ruling that the Temporary Facility was in violation of the height limitation and granting the County declaratory judgment on that issue. That ruling was vacated in *Burns 2016* and the County did not raise this issue again on remand. Therefore, we will not consider this argument for the first time on appeal.

### 2. The district court correctly determined that the County breached the implied covenant of good faith and fair dealing.

The district court determined that the County violated the implied covenant of good faith and fair dealing. It reasoned that by denying Burns Holdings' right to operate the Temporary Facility, the County "violated, nullified and significantly impaired" one of the Development Agreement's benefits: that Burns Holdings could continue to operate the Temporary Facility beyond 18 months if a delay outside of its control occurred. The County argues that it did not violate the implied covenant of good faith and fair dealing because express terms of an agreement negate any conflicting implied covenants, and here, the Development Agreement expressly required Burns Holdings to comply with all relevant laws, including the applicable height restriction.

The district court did not err in its determination that the County violated the implied

10

covenant of good faith and fair dealing. A party violates this covenant when it "violates, nullifies or significantly impairs any benefit of the contract." *River Range, LLC v. Citadel Storage*, LLC, 166 Idaho 592, ___, 462 P.3d 120, 131 (2020) (ellipsis omitted). In *Burns 2016*, we held that the force majeure clause in Paragraph 2.b excused the Burns Companies' failure to complete construction of the Permanent Facility within 18 months because the County's decision to withhold required zoning approvals was neither foreseeable nor within the Burns Companies' control given the fact that the Development Agreement expressly required the construction of a Permanent Facility that was 75 feet in height. *Burns 2016*, 161 Idaho at 120–21, 384 P.3d at 367–68. In so doing, we noted that the Development Agreement required the Burns Companies to construct and operate a temporary facility and provided that if construction was not completed within the allowable time period, the County could revoke the authority to operate the Temporary Facility. *Id.* at 119, 384 P.3d at 366.

For the Burns Companies, the Temporary Facility was not only a requirement of the Development Agreement, but it was also one of the advantages they derived from the parties' contract. Paragraph 2.b provided that the purpose of the requirement to construct and operate the Temporary Facility was to "facilitate and support the construction of the Permanent Facility and to allow [the Burns Companies] to expedite commercial operations" and that the grant of authority to operate the Temporary Facility was meant to allow the Burns Companies to "operate [their] business until the Permanent Facility [was] constructed." Thus, our decision in *Burns 2016* essentially established that the County's unwarranted order to stop operating the Temporary Facility nullified one of the key benefits afforded to the Burns Companies by the Development Agreement: the ability to continue to operate the Temporary Facility, even if the Permanent Facility had not been constructed within 18 months, if an unforeseeable delay outside of the Burns Companies' control occurred. Therefore, we uphold the district court's conclusion that the County violated the implied covenant of good faith and fair dealing. Because we hold that that the district court did not err in granting partial summary judgment on the breach of the covenant of good faith and fair dealing, we need not address the notice issue.

## C. The district court did not err in its determination regarding causation.

The County argues that the district court erred in granting summary judgment on the issue of causation. It cites *Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 76 F. Supp. 3d 756 (N.D. Ill. 2014), *aff'd*, 799 F.3d 827 (7th Cir. 2015) for the proposition that even in a case where reliance damages are sought, the plaintiff must show that the defendant's breach of contract caused its

damages. It argues that because the Burns Companies stopped operating the Temporary Facility in 2010 and the breaches identified by the district court occurred in 2012, their breaches could not have caused the Burns Companies' damages and summary judgment should not have been granted. We disagree with the County's analysis.

To begin with, we must clarify that the district court did not decide the causation issue at the summary judgment stage of the litigation. In its memorandum decision and order on reconsideration, the district court only decided that a breach of contract occurred and that the Burns Companies were not entitled to rescission; it did not decide whether the County's breach caused the Burns Companies' damages.

The district court actually determined the issue of causation after hearing the evidence at trial. The district court specifically found that the Burns Companies' reliance damages would not have been incurred but for the Development Agreement. It also found that cessation of the operation of the Temporary Facility in 2010 was caused in part by the conduct of the County.

The district court correctly cited the standard applicable to reliance damages: "A party aggrieved by a breach of contract may be entitled to reimbursement for losses caused by its reliance on the contract . . . . Reliance damages include expenses reasonably related to the purposes of the contract which would not have been incurred but for the contract's existence." *Beco Const. Co. v. Harper Contracting, Inc.*, 130 Idaho 4, 9, 936 P.2d 202, 207 (Ct. App. 1997) (citations omitted). It then properly applied this standard to the facts of this case. The Burns Companies met the but-for test articulated in *Beco* because of the district court's finding that the Burns Companies would not have incurred their expenses made in reliance on the Development Agreement "if not for the Agreement's existence," and those expenses were reasonably related to the purpose of the Development Agreement. Finally, the district court accurately concluded that the fact the County had not yet breached the Development Agreement when many of the Burns Companies' expenses were incurred was "immaterial." The district court found that the County had created a sufficiently hostile environment to cause, at least in part, the Burns Companies' decision to stop operating the Temporary Facility. As a result, the fact that the Burns Companies stopped operating the Temporary Facility in 2010 did not interrupt the causal link between the existence of the Development Agreement and the expenditures made in reliance on the Development Agreement. Therefore, the district court did not err in determining the Burns Companies had made a sufficient showing to satisfy the causation requirement for reliance damages.

12

The fact that the issue of causation was determined after hearing the evidence at trial rather than at the summary judgment stage is important because it changes our standard of review. When reviewing summary judgment rulings, we consider whether the movant showed that there was no genuine dispute as to any material fact and that the movant was entitled to judgment as a matter of law. *Crumb*, 165 Idaho at 286, 443 P.3d at 1042. However, when reviewing a trial court's conclusions following a bench trial, we only review whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Caldwell*, 165 Idaho at 795, 452 P.3d at 817. We do not disturb a trial court's findings of fact if they are supported by substantial and competent evidence. *Id.* Here, substantial and competent evidence supports the district court's trial findings regarding causation. For example, Kirk Burns testified that a soon-to-be County Commissioner wrote letters to concrete customers effectively telling them not to buy from Burns Concrete. After the County denied the CUP, newspaper articles appeared in the local paper stating that the plant could not be operated. This evidence supported the district court's finding that the County's actions at least partly caused the Burns Companies' decision to stop operations in 2010. Therefore, we will not disturb the district court's findings regarding causation on appeal.

Finally, we disagree with the County's interpretation of *Merry Gentlemen,* a case decided by the Seventh Circuit Court of Appeals which the County contends should guide the Court's legal analysis. In *Merry Gentlemen*, a production company sued Michael Keaton for $5.5 million when the critically acclaimed movie he directed bombed at the box office. 799 F.3d at 828–29. Keaton filed a motion for summary judgment on the issue of causation, arguing that the production company had failed to produce sufficient evidence that his alleged breaches of the directing contract caused its damages. *Id.* at 828. The production company's only evidence of causation was an affidavit from the movie's executive producer stating that the production company spent over $5 million in reliance on the directing contract. *Id.* at 829. In its opinion affirming the district court order granting Keaton's motion for summary judgment, the Seventh Circuit distinguished causation in typical reliance damages cases from causation in unusual cases like the one before it:

> In the typical case where reliance damages are sought, the defendant has simply repudiated the contract and walked away from the deal. This causal link will be straightforward in those cases. As the district court explained, in such cases the non-breaching plaintiff is left 'holding the bag after having made its expenditures.' In those cases, it is appropriate for the injured party to claim as damages all expenditures it made in preparation for performance because the other side failed to perform at all. In such cases, the complete loss of investment will often be the

13

proximate result of the breach.

But in cases like this one, where the breaching party has substantially performed and the alleged breaches have to do with the quality of the final product, the causal link between reliance damages and the breach is not so direct. An injured party cannot reasonably claim that all of its expenditures were caused by the other party's breach without some reason to think the breach destroyed the entire value of the breaching party's performance. In this context, the breach does not cause the complete loss of investment.

*Id.* at 830-31 (citations omitted).

The County argues that this is an "unusual" case, but it is actually a typical one. The district court found that the Development Agreement was a but-for cause of the Burns Companies' reliance damages. The Burns Companies' decision to stop operating in 2010 did not cut off that but-for causation because, as explained above, the district court found that this decision was at least partly caused by the County's creation of an unfavorable environment for the Burns Companies' business. Moreover, the County's characterization of the holding in *Merry Gentlemen* is inaccurate. The County does not actually quote the Seventh Circuit's holding in its briefing, but instead paraphrases the holding as: "In cases where the breaching party has substantially performed, the injured party cannot claim all of its expenditures as damages, because the breach did not cause the complete loss of the investment." The actual holding, however, contained an important limiting factor: "But in cases like this one, where the breaching party has substantially performed *and the alleged breaches have to do with the quality of the final product*, the causal link between reliance damages and the breach is not so direct." *Id.* at 831 (emphasis added). The decision goes on to say: "An injured party cannot reasonably claim that all of its expenditures were caused by the other party's breach without some reason to think the breach destroyed the entire value of the breaching party's performance. In this context, the breach does not cause the complete loss of investment." *Id.* The County never addresses this important limiting language from *Merry Gentlemen.* In this case, the County breached the covenant of good faith and fair dealing and left the Burns Companies, in the words of the Seventh Circuit, "holding the bag" after they made substantial expenditures. For these reasons, we affirm the district court's determination on the issue of causation.

**D. The district court erred in granting declaratory judgment to the Burns Companies.**

In their supplemental proposed conclusions of law, the Burns Companies requested the following declaratory relief: (1) estopping the County from rezoning the Property, (2) declaring the 18-month period for construction of the Permanent Facility was tolled, and (3) ordering the County

14

to rescind and withdraw its revocation of the Burns Companies' authority to operate the Temporary Facility. The district court rejected the first and third forms of requested declaratory relief, but declared that the running of the 18-month time period was tolled in accordance with *Burns 2016*. The County advances several arguments against the district court's award of declaratory judgment, including that the declaration could lead to confusion and double recovery. The Burns Companies respond that any confusion can be cured by rescission of the Development Agreement. We agree with the County that declaratory relief should not have been granted where reliance damages were awarded.

The district court erred in declaring that the 18-month period was tolled as a matter of law. In this case, that relief was inconsistent with an award of reliance damages, which included costs related to demobilization of the Temporary Facility. Awarding reliance damages and allowing the Burns Companies to continue to operate the Temporary Facility would provide a double recovery to the Burns Companies for their losses. We are not holding that reliance and expectation damages can never both be awarded. (Here, expectation damages would be in the form of continued operation of the Temporary Facility.) However, in this case, the Burns Companies' inclusion of demobilization expenses makes it clear that the declaration tolling the 18-month period should not have been made.

Additionally, the Burns Companies seek rescission of their obligations under the Development Agreement, seemingly because they believe that rescission is necessary. Rescission is not necessary. The County breached the Development Agreement, the Burns Companies sued for damages, and they have been awarded damages. Rescission is unnecessary because the County's breach excused the Burns Companies' performance. One party's material breach of a contract suspends the other party's obligation to perform. 14 Williston on Contracts § 43:5 (4th ed.). At this point, the Development Agreement is of no further force or effect.

### E. Damages Issues

Our review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Caldwell*, 165 Idaho at 795, 452 P.3d at 817. This standard of review applies to review of a trial court's findings of fact regarding the amount of damages proven by a claimant. *Mortensen v. Berian*, 163 Idaho 47, 53, 408 P.3d 45, 51 (2017).

### 1. It is unnecessary to address the issue of whether a party is entitled to choose between reliance and expectation damages.

The County argues that this Court should adopt a rule that a party cannot recover reliance

damages when expectation damages are ascertainable. Applying that rule to this case, the County argues, would mean that the district court's award of damages should be reversed because the Burns Companies' expectation damages were ascertainable. In response, the Burns Companies argue that a non-breaching party can choose either expectation or reliance damages, citing *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 797, 435 P.3d 1106, 1117 (2019). In any case, the Burns Companies add, expectation damages were not ascertainable here.

It is unnecessary for us to address the issue of whether a party is entitled to choose between reliance and expectation damages. In *SilverWing*, another case involving a dispute between a developer and a county, the trial court determined that the developer's expectancy testimony was too speculative. *Id.* at 796, 435 P.3d at 1116. Therefore, the developer had no choice but to ask for reliance damages. Similarly, in this case, the trial testimony of Kirk Burns establishes that he could not calculate lost profits because of the erosion of Burns Concrete's customer base as a result of the County's actions. He was acknowledging that lost profits were too speculative. Therefore, the Burns Companies were limited to seeking reliance damages, and could not choose to claim expectation damages instead. There are many other cases involving nascent businesses in which courts have denied lost profits because they were too speculative. *See, e.g.*, *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 920 (8th Cir. 2004) (new mining corporation's lost profits too speculative where it had sold only a small amount of the "paltry" quantity of gravel produced by the mine); *Ciraolo v. Miller*, 138 A.D.2d 443, 525 N.Y.S.2d 861 (1988) (commercial tenant's twelve-month projection of lost profits too speculative where they were based on a one-month profit history); *Springwell Dispensers, Inc. v. Hall China Co.*, 204 Ga. App. 245, 245, 419 S.E.2d 112, 113 (1992) (lost profits too speculative where claimant "was a new business with no history of profits and, in fact, was operating at a loss"). Therefore, it is unnecessary to address the issue of whether a party may choose between reliance and expectation damages.

### 2. The district court did not misapply the law regarding capping of damages.

The County argues that the district court misapplied the law regarding capping of reliance damages. When an injured party seeks reliance damages, those damages must be reduced by "any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." Restatement (Second) of Contracts § 349 (1981). This rule is sometimes referred to as the "losing contract limitation." The County asserts that this Court's decision in *King v. Beatrice Foods Co.*, 89 Idaho 52, 402 P.2d 966 (1965) set forth the correct

16

measure of reliance damages, and that if the district court had applied *King*'s methodology, the Burns Companies could only recover reliance damages up to the amount of lost profits that they were able to prove. In this case, the County asserts, that would mean the Burns Companies could recover nothing for the period ending in 2016 and, at most, $115,602 for the period ending in 2017.

The County misreads *King*. *King* involved a milk deliverer who sought both reliance damages and lost profits after a milk processor breached its contract with him. 89 Idaho at 56–57, 402 P.2d at 968. The Court explained that both reliance and expectation damages may be awarded, but only to the extent that does not result in a double recovery for the plaintiff. As a result, the Court held, the milk deliverer was entitled to his net reliance expenses plus any lost profits over and above those expenses. *Id.* at 59, 402 P.2d at 970. Therefore, *King* stands for the proposition that when an expense was both incurred in reliance on the contract and was a cost of performance, it cannot be double counted in an award of reliance and expectation damages. *See id.* Nothing about *King* suggests that the amount of lost profits a plaintiff can prove acts as a cap on the plaintiff's allowable reliance damages. This rule would run contrary to the general principle that a plaintiff can seek reliance damages when expectation damages are *not* ascertainable. *See, e.g.*, 24 Williston on Contracts § 64:4 (4th ed.) ("*[W]here the proof of lost profits is not reasonably certain*, the promisee may seek, as an alternative to protection of his or her expectation interest, damages based instead on his or her reliance interest.") (emphasis added). Therefore, the County's argument that the district court misapplied the losing contract limitation on reliance damages is unpersuasive.

### 3. The district court did not err in its determination of the appropriate time period for reliance damages.

The district court allowed the Burns Companies to recover reliance damages actually incurred from February 26, 2007, through the time of trial, along with demobilization costs to cover the expense of removing their equipment. It cited *French v. Nabob Silver-Lead Co.*, 82 Idaho 120, 350 P.2d 206 (1960) for the proposition that this Court has held that reliance damages may include expenses incurred before the parties reach an agreement. The County argues that the district court should have limited awardable damages to those incurred after August 31, 2007—the date of the Development Agreement—and before February 26, 2011—the date on which it asserts that it was statutorily authorized to rezone the Property. The County contends that damages incurred outside of these dates may not be awarded because this was the only range of time in which reliance was reasonable. In response, the Burns Companies argue that the County presents no persuasive reason why *French*'s allowance of pre-contractual expenses is not controlling in this case.

17

We agree with the district court that pre-contractual expenses may be awarded in certain cases, and were awardable here. The reliance period is best characterized as a foreseeability issue. *See, e.g.*, *Bases for damages—Reliance interest*, 24 Williston on Contracts § 64:4 (4th ed.) ("Reliance damages are designed to compensate the plaintiff for any *reasonably foreseeable* costs incurred or expenditures made in reliance on the promise that has now been broken.") (emphasis added). The district court found that that the Burns Companies' expenditures were reasonably foreseeable once the County approved their requested zone change. Furthermore, *French* is the law in Idaho and the County has not persuaded us to reverse it. Therefore, we affirm the district court's decision to allow damages incurred from the time of the zone change approval until the date of demobilization.

**4. The district court did not err by declining to reduce the Burns Companies' damages by the amount of their purported losses during the damages period.**

In its memorandum decision and order on the County's motion for additional findings of fact and the Burns Companies' motion for amended additional findings of fact and conclusions of law, the district court declined the County's request to reduce the Burns Companies' reliance damages after determining that the County failed to prove the Burns Companies would have suffered a net loss absent breach. The County argues that the district court erred by failing to reduce the Burns Companies' damages award by the amount the County claims it proved, through the testimony of its expert witness Hoffman, that the Burns Companies would have lost absent the County's breach. We disagree. The County is arguing that the district court only had to look at losses sustained during the four-year damages period. This argument is logically flawed and relies on a misreading of Section 349 of the Restatement (Second) of Contracts. Section 349 explains that an injured party has a right to reliance damages "less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." Restatement (Second) of Contracts § 349 (1981). Therefore, under the Restatement, the breaching party is entitled to an offset for losses that would have occurred had the contract been performed. The performance period is not limited to the four-year damages period. There was evidence that no loss would have occurred if the Burns Companies had been allowed to operate. Therefore, we affirm the district court's determination that the County failed to show it was entitled to a reduction of damages.

**5. The district court erred in its reduction of the Burns Companies' damages by the difference between their sales and cost of sales.**

In its findings of fact and conclusions of law, the district court determined that the Burns

18

Companies expended $1,461,393.53 in reasonable reliance on the Development Agreement. However, it then subtracted $412,142.63: the difference between the Burns Companies' sales proceeds ($625,196.45) and cost of sales ($213,053.82) during their operation of the Temporary Facility. The Burns Companies argue that this reduction was improper because they actually suffered a net *loss* during their operation of the Temporary Facility. We agree that the record does not contain substantial and competent evidence to support the district court's reduction.

The district court's reduction was based on the sales proceeds and cost of sales figures included in the Burns Companies' Exhibit 7, which was admitted at trial. However, the Burns Companies' evidence established that they also incurred expenses for equipment and plant costs, the write-off of uncollected receivables, labor costs, and fuel costs. Exhibit 7 actually reflected a $325,606.72 net loss from operating the Temporary Facility, not a net profit as apparently found by the district court. Both Allen Barger and Kirk Burns testified to that effect at trial. Moreover, the district court itself expressly found that the Temporary Facility lost money after taking incremental profits, debt service, and sunk costs into account. The district court's reduction of reliance damages by the difference between sales proceeds and costs of sales failed to account for those additional costs incurred in operating the Temporary Facility. Therefore, the district court's finding that the Burns Companies' damages should be reduced by $412,142.63 is unsupported by substantial and competent evidence. We direct the district court to remove this improper subtraction from the Burns Companies' damages award.

### 6. The district court did not err by refusing to provide an itemization of the reliance damages it declined to award.

In its findings of fact and conclusions of law, the district court recognized that Burns Concrete's financial records showed net expenditures of $1,905,344.78 from December 2006 through the date of trial, but found that Burns Concrete expended only $1,461,393.53 in reasonable reliance on the Agreement. Specifically, the district court found that several categories of expenditures were not sufficiently proven or were not incurred in reliance on the Agreement. It explained which categories these were and why it eliminated them, although it did not identify specific line items of excluded expenditures:

> The evidence in the record does not indicate how expenditures described as "travel" were incurred. Plaintiffs did not persuade the Court that travel expenses were reasonable or were incurred in reliance on the Agreement.
> The record does not establish how each of the line entries for "Legal Expenses" was incurred. Plaintiffs did not persuade the Court that the claimed legal

19

expenses were incurred in reliance on the Agreement.

Plaintiffs' [sic] lost and were unable to recover the records verifying the cost of consumables labeled as "truck alloc" on Exhibit 8. This Court finds those charges to be speculative and does not include them in damages.

Costs incurred to prepare presentations to Teton County for a CUP or zone variance were made for the purpose of complying with land use statutes and ordinances and are not attributable to reliance on the Agreement.

…

This Court is not convinced . . . that Teton County did or could have foreseen Plaintiffs' expenditures, which arose prior to the zone change made on February 26, 2007. Plaintiffs' expenditures, incurred in preparation for Plaintiffs' performance under the Agreement, shall be permitted from February 26, 2007, onward.

However, in a footnote, the district court noted that it had reviewed each line item: "For the sake of clarity, this Court notes that in calculating this amount it reviewed each line item in Exhibit 8. Where the Court eliminated certain claimed expenditures for reasons discussed above, it also eliminated any corresponding credit (where applicable)." In its memorandum decision and order on the Burns Companies' motion for amended and additional findings of fact and conclusions of law, the district court rejected the Burns Companies' argument that it should have specified which Exhibit 8 line items it eliminated in calculating damages. It stated that its findings provided a clear understanding of the basis of its decision, and that it did not need to specifically identify each line item by number or make findings specific to each column.

On appeal, the Burns Companies argue that the district court improperly reduced their damages award by $443,951.25 because it did not identify the specific line items of costs that were disallowed and because it did not point to any substantial evidence contradicting the trial testimony of two witnesses supporting those costs. In response, the County argues that the district court appropriately analyzed the Burns Companies' claim by category rather than by line item because given the large number of line items, conducting a line-by-line analysis would be unduly burdensome. The County further argues that the categories identified by the district court correlate to items described in Exhibit 8 with enough specificity to demonstrate the district court's reasoning. We agree with the County.

Several of the categories used by the district court were used by the Burns Companies themselves in Exhibit 8, and the costs are easily identifiable. "Travel" is a term listed under the "JOB PHASE DESC / NOTES" column for a series of line items on page 6 of Exhibit 8, among other pages in Exhibit 8. "Legal Expenses" is a term listed under the "DESCRIPTION" column for a series of line items on page 65 of Exhibit 8, among other pages in Exhibit 8. "Truck Allocation" is a

20

term listed under the "RELATED PAYROLL TAX / INS / TRUCK" column for a series of line items on page 62 of Exhibit 8, among other pages in Exhibit 8. There is not a label in Exhibit 8 for costs incurred to prepare presentations to Teton County for a CUP or zone variance, but they were likely included with the previously disallowed category of "Legal Expenses," given that one of the County's reasons for arguing that legal expenses should be disallowed was that they included "fees related to the failed application for a conditional use permit and appeal of its denial." Finally, it is easy to determine whether a particular line item was incurred before or after February 26, 2007, because the Burns Companies included a column called "CHECK # / EFT DATE / FINANCED DATE" in Exhibit 8. Barger testified that the date under this column was the date of payment and that he had no reason to believe any expenses were paid before they were incurred.

Moreover, the Burns Companies do not sufficiently challenge the reasons for the district court's reduction of the award, as opposed to its failure to sufficiently identify what claimed damages it was disallowing. They only make the conclusory statement that the district court did not "identify any substantial evidence in the record supporting its determination to reject the trial testimony of Allen Barger and Kirk Burns supporting those costs," without citing to the parts of their testimony that they view as supporting those costs. Our standard of review requires that a cogent argument be presented." *Matter of Doe I*, 166 Idaho 79, 454 P.3d 1162, 1167 (2019). Even if the Court considers this statement to be a sufficient challenge to the evidence supporting the district court's decision, it is not persuasive. Neither Barger nor Kirk Burns testified regarding "travel" expenses. The district court's comment about the Burns Companies' loss of records related to "truck alloc" costs was likely based on Barger's testimony about timecards that were not keyed in correctly. As mentioned above, the district court's disallowance of legal expenses is likely related to its disallowance of costs incurred to prepare presentations to Teton County for a CUP or zone variance. In its proposed findings of fact and conclusions of law, the County pointed out that the Burns Companies' claimed legal expenses included fees that predated the Agreement, fees related to their failed CUP application, and others arguably unrelated to reliance on the Agreement. The County supported this argument by citing to pages of supporting documentation in the 73 binders that the Burns Companies brought to trial that it claimed supported its claims for legal expenses. These pages were admitted as Defense Exhibit O. Finally, the district court's disallowance of costs incurred before the zone change is supported by the reasoning it gave: the County could not have foreseen those expenditures that occurred before its zone change. The Burns Companies do not explain why

this reasoning is unsound. Therefore, even though Barger and Kirk Burns may have testified in general support of the damages claimed in Exhibit 8, there was substantial evidence supporting the district court's disallowance of certain categories of expenditures. In these situations, our Court does not second guess the district court's determination. *Dep't of Envtl. Quality v. Gibson*, 166 Idaho 424, 432, 461 P.3d 706, 714 (2020) ("Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—*even in the face of conflicting evidence in the record.*") (emphasis added). As such, the district court did not err in its disallowance of these claimed reliance damages.

### 7. The district court did not abuse its discretion by declining to award prejudgment interest.

In its findings of fact and conclusions of law, the district court determined that the Burns Companies were not entitled to prejudgment interest on their award of damages. It reasoned that the County could not have ascertained the amount of damages prior to trial, given (1) the extensive work Barger had to do to compute the Burns Companies' damages, and (2) its finding that some of the expenditures were not made in reliance on the Development Agreement. The Burns Companies argue that the district court abused its discretion by disallowing prejudgment interest because at least $1,049,250.90 of their damages were undisputed and therefore ascertainable. They also assert that the County did not dispute either the amount or the date of any of Exhibit 8's line items of costs.

Awards of prejudgment interest are reviewed for abuse of discretion. *Med. Recovery Servs., LLC v. Neumeier*, 163 Idaho 504, 511, 415 P.3d 372, 379 (2018). When applying the abuse of discretion standard, this Court asks whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

The district court did not abuse its discretion by disallowing prejudgment interest. Prejudgment interest is only justified when the principal amount of liability is liquidated or ascertainable by mere mathematical process. *Kelly v. Wagner*, 161 Idaho 906, 912, 393 P.3d 566, 572 (2017). The district court correctly applied this law in determining that the Burns Companies were not entitled to prejudgment interest. For example, in order to create Exhibit 8, Barger testified that he had to go through thousands of business records and determine what portion of the claimed expenses were attributable to the Temporary Facility. Furthermore, the district court acted within the outer boundaries of its discretion when it determined that the amount due was not determined until

22

trial. Therefore, we affirm the district court's determination that the Burns Companies are not entitled to prejudgment interest.

## F. Attorney Fees Awarded Below

Both parties challenge the district court's award of attorney fees to the Burns Companies. The dispute centers around an unconventional fee agreement that the Burns Companies entered into with Parsons Behle about 60 days after trial, but prior to the district court's entry of findings of fact and conclusions of law. The Burns Companies initially hired their attorneys at their regular hourly rates. After years of litigation, however, the Burns Companies allege they were unable to keep their financial obligations current and faced the prospect of their attorneys withdrawing. The Burns Companies assert they entered into a new fee agreement with Parsons Behle to ensure continued representation. The new fee agreement required the Burns Companies to pay the law firm three times the regular hourly rate on any amounts more than 120 days past due. The fees were to be paid solely out of funds received from the County and the risk of non-recovery or a shortfall rested with Parsons Behle. The fee agreement provided in relevant part:

> 3. All future payments made by the Burns entities will be applied by the Firm so as to bring the outstanding balances on the various matters for which the Firm is providing legal services into compliance with the foregoing payment protocol before any application is made to the fees owed for the Lawsuit, with the application of all payments for fees owed for the Lawsuit being applied to the oldest fees outstanding that have not been converted to the modified contingent-fee basis provided in the following part 4.
>
> 4. All fees (but not costs) previously or subsequently billed for the Lawsuit that have not yet been or are not hereafter, as applicable, paid within 120 days from the respective invoice dates (of which there are currently $44,297.50 in such fees) shall be converted to the following modified contingent-fee terms:
>
> > (a) Three times (300%) the total amount of such fees shall be payable to the Firm out of the first dollars collected from Teton County with respect to the Lawsuit, whether received on judgment entered against or upon settlement with Teton County; and
> >
> > (b) Payment of those fees not paid within 120 days from their respective invoice dates is contingent upon the collection of money from Teton County with respect to the Lawsuit, and none of such fees shall be payable by the Burns entities other than out of any moneys collected from Teton County with respect to the Lawsuit.
>
> 5. Excepting only those fees relating to the Lawsuit converted to the modified contingent-fee terms provided in the foregoing part 4, the Burns entities will remain personally liable for the payment of the Firm's fees and costs previously or subsequently billed to them.

23

The Burns Companies submitted an initial attorney fee request to the district court totaling $1,071,753.73. The fee request included $514,672.77 in hourly fees plus $557,080.96 in what they called "supplemental contingency fees." The supplemental contingency fees were calculated as follows: $278,540.48 in fees more than 120 days past their invoice dates (and therefore subject to the contingency fee agreement) x 2 = $557,080.96 in supplemental contingency fees. The district court awarded the Burns Companies all of the hourly fees requested plus supplemental contingency fees equal to one time the regular hourly rate. In other words, the district court awarded the Burns Companies two times the regular hourly rate on fees more than 120 days old.

Following the initial award of attorney fees the Burns Companies filed a motion to reconsider, seeking an additional award of $88,603.50. The request consisted of $16,254.50 in hourly fees incurred after the initial award plus $72,349.00 in supplemental contingency fees for additional amounts unpaid for more than 120 days past their invoice date. The district court awarded the Burns Companies $16,254.50, thereby denying any supplemental contingency fees.

The Burns Companies argue that the district court erred by reducing their requested fees without adequate explanation. The County argues that the district court erred by awarding any "supplemental contingency fees" because the fee agreement imposed a fixed fee with a usurious rate of interest designed to put an unreasonable burden on the County. We agree with the Burns Companies and the County that the district court failed to provide an adequate explanation for its awards and provide guidance on remand to address arguments made by the parties.

The district court correctly perceived the award of attorney fees as one of discretion and analyzed the factors set forth in Idaho Rule of Civil Procedure 54(e)(3) in both of its decisions. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194 (describing this Court's abuse of discretion standard of review). What is missing from the decisions, however, is the link between the factors set forth in Rule 54(e)(3) and the specific final awards that were made. Stated differently, the district court failed to "explain[] the relationship between the [district] court's evaluation of the Idaho Rule of Civil Procedure 54(e)(3) factors and its decision regarding the amount to award for attorney[] fees." *H2O Envtl., Inc. v. Farm Supply Distributors, Inc.*, 164 Idaho 295, 300, 429 P.3d 183, 188 (2018). As this Court has explained, "[i]t is not enough for a trial court to acknowledge the existence of the Rule 54(e)(3) factors; rather, it must appear that there is a reasoned application of those factors in the trial court's decision regarding the amount of attorney[] fees to be awarded." *Id.* Here, the reasoned application of the Rule 54(e)(3) factors to the district court's decision is missing. Thus, we vacate the

district court's awards of attorney fees and remand the matter to the district court with instruction to explain how the application of the factors in Idaho Rule of Civil Procedure 54(e)(3) logically lead to the specific amount of fees awarded.

For purposes of remand we emphasize that all fees awarded under Rule 54(e) must be reasonable, and whether a fee is fixed or contingent is a factor the district court must consider. I.R.C.P. 54(e)(3)(E). The Rule does not further explain how the district court should weigh this factor, but we observe that it must be weighed in light of the function of contingency fees in our legal system—to enable those who are unable to pay hourly fees to secure representation and to compensate attorneys reasonably for the risks they have taken in representing the client. Contingency fee agreements involve risk and uncertainty for attorneys—the risk of not being paid if the client does not prevail; uncertainty about the amount that will ultimately be recovered; uncertainty about the amount of time and money that will be required to obtain recovery; and, uncertainty about how much time will be required to obtain recovery. Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739, 748 (2002). Given these risks, "the attorney's client will sometimes pay more than he or she would have paid under an hourly fee agreement . . . ." *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 748, 152 P.3d 614, 619 (2007).

To determine whether the attorney fees requested by the Burns Companies are reasonable, it is necessary to assess several interrelated issues. What were the risks for the Burns Companies at the time they entered into the contingency fee agreement given their alleged inability to pay Parsons Behle? Similarly, what were the risks and uncertainties for Parsons Behle and the individual attorneys responsible for the case? Given the fact that partial summary judgment on liability had been granted and the case was to be tried solely on the issue of damages, was there a risk of a non-recovery or shortfall? Was that risk significant? Is the amount of the contingent fee commensurate with the time and effort needed to obtain payment? These are all matters that the district court is positioned to evaluate in its discretion.

### G. Attorney Fees on Appeal

Both parties request attorney fees on appeal pursuant to Paragraph 12 of the Development Agreement. Because both parties have prevailed in part, neither is awarded attorney fees on appeal. Likewise, we decline to award costs.

### III. CONCLUSION

The district court's grant of partial summary judgment on the issue of breach of contract is affirmed. The district court's judgment is vacated for a recalculation of damages. In its recalculation of damages, the district court should reverse its reduction of damages by the difference between the Temporary Facility's sales and cost of sales. The district court's orders on attorney fees are vacated and the issue is remanded with instruction to the district court to explain the basis of its attorney fee awards.

Chief Justice BURDICK, and Justices BEVAN and STEGNER, and Justice Pro Tem TROUT CONCUR.